**BALTIMORE & O. R. CO. et al. (INTER-STATE COMMERCE COMMISSION, Intervener) v. CHICAGO JUNCTION RY. CO.**

**No. 9064.**

Circuit Court of Appeals, Seventh Circuit.

July 8, 1946.

Ralph M. Shaw, Guy A. Gladson, and Bryce L. Hamilton, all of Chicago, Ill. (Winston, Strawn & Shaw, of Chicago, Ill., of counsel), for appellant.

Ernest S. Ballard, W. I. Deffenbaugh, and William F. Price, all of Chicago, Ill. (Pope & Ballard, of Chicago, Ill., of counsel), for Baltimore & O. R. Co.

H. L. Underwood, of Washington, D. C., for Interstate Commerce Commission.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

SPARKS, Circuit Judge.

By this action plaintiff companies sought damages against the defendants, and a preliminary and permanent injunction. The action sought damages and to enjoin defendants' alleged disobedience of a condition contained in an order of the Interstate Commerce Commission of May 16, 1922, see Chicago Junction Case, 71 I.C.C. 631, and to enforce an alleged agreement said to have arisen by operation of law out of that order. A preliminary injunction was issued against all three defendants, and the cause was set for final hearing on September 20, 1946. From this interlocutory decree the appeal is prosecuted by Chicago Junction Railway Company.

All the facts have been stipulated: The plaintiffs are eight operating railroads. The Interstate Commerce Commission was given leave to intervene as a plaintiff, and filed an intervening complaint.

Defendants are The Chicago River and Indiana Railroad Company, Chicago Junction Railway Company, and The New York Central Railroad Company. They are referred to respectively as the River Road, the Junction, and the Central.

Plaintiffs and Central are competing trunk-line railroads whose lines extend easterly and southeasterly from the City of Chicago, and each of them is engaged in

the transportation of live stock, other than hogs and sheep, from the Union Stock Yards in Chicago to points of destination east and southeast.

The Junction is a non-operating, lessor railroad corporation. Prior to May 19, 1922, it operated a small but important switching road in and around the Union Stock Yards in the City of Chicago in conjunction with a connecting but separate switching line owned and operated by the River Road. Both of these terminal railroads are now, and since May 19, 1922, have been operated by the River Road, which is a wholly-owned subsidiary of Central.

On May 16, 1922, on the application of Central, the Interstate Commerce Commission entered an order in Chicago Junction Case, supra, in which it approved and authorized (1) the acquisition by Central of the control of River Road by the purchase of its capital stock, and (2) the acquisition by River Road of control of the property of Junction by lease for ninety-nine years, and in perpetuity thereafter, at the option of the lessee. The approval and authorization were made subject to the observance of certain conditions, one of which, not here material, was modified in a supplemental order, in Chicago Junction Case, 150 I.C.C. 32, on December 3, 1928. The order of May 16, 1922, was upheld as valid by a decree of a three-judge District Court for the Northern District of Illinois, Eastern Division, on January 15, 1929.

On May 19, 1922, pursuant to such approval and authorization of the Interstate Commerce Commission, Central acquired all the capital stock of River Road, and the latter leased from Junction, at a fixed annual rental, all the lines of railroad and other railroad properties of Junction, including all of the locomotives and cars, for a term of ninety-nine years, and thereafter, at the option of River Road, in perpetuity. Both terminal properties thus came under the control of Central which has continued ever since.

The lease referred to expressly provides that River Road "shall have the right to conduct, operate and manage * * * the premises and properties by this instrument

demised." This provision is in accord with the Commission's order, which approved and authorized the acquisition by River Road of the control of the property of the Junction. The authorizing words of the order are in conformity with the language of Section 5(2) of the Interstate Commerce Act as it then read, 49 U.S.C.A. § 5(2), which provided that the Commission should have authority to approve and authorize the acquisition, to the extent indicated by the Commission, by one of such carriers of the control of any other such carrier or carriers under a lease.

Upon making the lease referred to, River Road took over the personnel of Junction, except a few of its officers. Since that time the demised properties of Junction have been in the possession of River Road, which has been the sole operator of it under the name of Chicago Junction Railway, Chicago River and Indiana Railroad Company, Lessee. Since making the lease, Junction has not had any tariffs on file with either the Interstate Commerce Commission or the Illinois Commerce Commission, and has not operated, or in any way participated in the operation of the properties leased by it to River Road, nor had any voice in its management or operation. At no time since the date of the lease has Junction had any traffic or operating relationships, arrangements or agreements with plaintiffs, River Road, Central or any other railroad.

The sole activities of Junction, since the execution of the lease, have been those of a non-operating lessor railroad corporation, consisting principally of the collection and distribution of the rentals received from River Road. Junction has only three officers: a president, a secretary and treasurer, and an auditor. It has neither a traffic nor an operating department, nor officers or employees engaged in any of those activities.

On May 16, 1922, the date of the authorizing order of the Commission, and for many years prior thereto, plaintiffs or their predecessors in interest were permitted to operate with their own power and crews over the line of Junction to and from the Union Stock Yards in Chicago for the purpose of placing empty stock cars, used in

transporting livestock other than hogs and sheep, at points of loading in the Union Stock Yards, and for the purpose of removing such cars after they had been loaded. For this privilege plaintiffs or their predecessors in interest paid a trackage charge. These operating arrangements were continued in effect by River Road from May 19, 1922, until and including January 31, 1946.

On or about January 25, 1946, Central and River Road notified plaintiffs that on and after February 1, 1946, Central and River Road would not permit plaintiffs to operate over the demised line of Junction for the purpose of placing empty stock cars at the Union Stock Yards for loading, or for the purpose of removing such cars after they had been loaded. Plaintiffs were further notified by Central and River Road that on and after February 1, 1946, the terminal switching work on the demised railroad formerly performed by plaintiffs with their own power and crews would be performed by River Road with its own power and crews. The change in operating arrangements was placed in effect by River Road on that date, and from then until March 15, 1946, the effective date of the preliminary injunction entered by the District Court, the terminal switching work above described was performed by River Road.

The change in switching arrangements made effective on February 1, 1946, resulted from an agreement between River Road and one of the railroad brotherhoods. It was not suggested, made, authorized, participated or concurred in by Junction.

Prior to February 1, 1946, plaintiffs paid River Road for the privilege of operating over the demised railroad to and from the Union Stock Yards a trackage charge of one dollar per car, empty or loaded. Since the change in operating arrangements was made effective, River Road has demanded for its terminal service, a division, in the amount of $12.96 per loaded car, out of the joint through rates on carload shipments from the Union Stock Yards to the various points of destination.

The theory of both complaints is that the defendants have violated condition No. 3 in the order entered by the Commission on May 16, 1922. It reads as follows:

"The present traffic and operating relationships existing between the Junction and River Road and all carriers operating in Chicago shall be continued, in so far as such matters are within the control of the Central."

Both complaints charge that the change in operating arrangements made effective by the River Road on February 1, 1946, was a change in traffic and operating relationships within the meaning of condition No. 3. The original plaintiffs charge that, by operation of law and by virtue of condition No. 3, an agreement came into effect between the Central, Junction, and the River Road, on the one hand, and plaintiffs and other railroads similarly situated, on the other hand, to abide by conditions set forth in the Commission's order.

To each complaint Junction filed a motion to dismiss the complaint as to it. These motions are based upon two grounds: (1) That the District Court lacked jurisdiction of the subject matter of the action, in so far as it relates to the Junction, because one of the plaintiffs and the defendant Junction are citizens of the State of Illinois, and that the action does not arise under any Federal statute, treaty or the Federal Constitution, and further because condition No. 3, above referred to, does not apply to it; and (2) that each complaint fails to state a claim against the Junction upon which relief can be granted.

The District Court has not passed upon this motion. However, the court ruled that it had jurisdiction of the subject matter and over the parties and issued a temporary restraining order against each defendant enjoining them from failing and neglecting to obey the Commission's order of May 16, 1922; and from failing and refusing to permit plaintiffs respectively to move empty cars for loading live stock other than hogs and sheep with their own power and crews over the line of the River Road to points of loading on said line in said Union Stock Yards, and, after such cars have been loaded, to move the same from said points of loading over the line of the River Road to plaintiffs' respective

**360**

lines, and it affirmatively commanded the defendants and each of them to permit plaintiffs to move such cars in the manner last above described until the final hearing of this cause. The Junction's motions to dismiss were likewise continued until such final hearing.

■ The jurisdiction of this case does not depend upon diversity of citizenship. We think the District Court had jurisdiction by virtue of section 16 of the Interstate Commerce Act, 49 U.S.C.A. § 16(12); 49 U.S.C.A. § 5; 28 U.S.C.A. § 41(8); Mulford v. Smith, 307 U.S. 38, 59 S.Ct. 648, 83 L.Ed. 1092.

■ Whether condition No. 3 in the Commission's order of May 16, 1922, can be properly construed as to hold the defendants or any of them liable for damages in this case is not before us. The District Court has not yet passed upon that matter and of course we should not do so. The District Court did not err in withholding its decision on that point until the final hearing.

■ The only·remaining question before us is whether the District Court erred in issuing its restraining order against the defendant Junction. The stipulation of the parties and the findings of fact disclose that Junction had nothing whatever to do with the acts complained of and that they could have done or can do nothing to aid or harm in any way plaintiffs' right to recover if it be held that they are entitled to the relief prayed. Junction has made no threats of any kind, and so far as this record discloses, it stands ready to abide by any order that the court may make. There is nothing in this record to disclose that Junction is not able and willing to pay any judgment which may be rendered against it, and, so far as it is concerned, ˙injunctive relief is purely ancillary. Opposing counsel has suggested nothing which Junction can do or not do that will in any way interfere with plaintiffs' full recovery. The only argument in favor of the injunctive relief against Junction is that such relief will not harm it. Heretofore that has not been a sufficient ground for an injunction. Of course, the District Court had a wide discretion in issuing injunctive relief, but in every instance there must be some basis for it. Opposing counsel has suggested no basis other than that we have stated.

The ruling of the District Court in issuing a temporary restraining order against Junction is reversed. The cause is remanded for further proceedings not inconsistent with this opinion.