BROTHERHOOD OF RAILROAD TRAINMEN *v.*
BALTIMORE & OHIO RAILROAD CO. ET AL.

No. 970.   Argued May 6, 1947.—Decided June 9, 1947.

*Burke Williamson* argued the cause for appellant. With him on the brief was *Jack A. Williamson. E. Douglas Schwantes* and *Robert McCormick Adams* were also of counsel.

*Ernest S. Ballard* argued the cause and filed a brief for appellees.

MR. JUSTICE MURPHY delivered the opinion of the Court.

Our concern here is with the intervention rights of representatives of railroad employees in a suit brought against the railroad under § 16 (12) of the Interstate Commerce Act, 49 U. S. C. § 16 (12).

The origin of this suit is to be found in an order issued by the Interstate Commerce Commission on May 16, 1922. *Chicago Junction Case,* 71 I. C. C. 631. See also *Chicago Junction Case,* 264 U. S. 258. The Commission there approved the purchase by the New York Central Railroad Co. (Central) of all the capital stock of the Chicago River & Indiana Railroad Co. (River Road); it also authorized the leasing to River Road of all the properties of the Chicago Junction Railway Co. (Junction) for 99 years and thereafter, at the lessee's option, in perpetuity. Among the properties in question were trackage and switching facilities at the Union Stock Yards, Chicago, Illinois, connecting with various trunk lines. Prior to the Commission order, the practice had been for the trunk line railroads to use their own power and crews to move their empty and loaded livestock cars over these tracks to and from the loading places in the Union Stock Yards. For the privilege of so moving their cars, the railroads were charged $1.00 per car, loaded or empty.

The Commission made various conditions to its approval of the proposed transactions. The third condition provided: "The present traffic and operating relationships

existing between the Junction and River Road and all carriers operating in Chicago shall be continued, in so far as such matters are within the control of the Central." 71 I. C. C. at 639. This condition is still in effect, the Commission's decision and order having been found to be valid and binding on all parties in a proceeding in the District Court in 1929.[1]

The trunk line railroads have continued to use their own power and crews in moving their livestock cars over the trackage operated by River Road and have paid River Road the amount of $1.00 per car. But on January 25, 1946, Central and River Road notified the railroads that on and after February 1, 1946, the cars would be moved over this trackage by means of the power and crews of River Road and that the handling charge would be $12.96 per outbound loaded car. Soon after this new practice went into effect, the trunk line railroads (appellees herein) brought this suit for preliminary and permanent injunctions under § 16 (12) of the Interstate Commerce Act against Central, River Road and Junction. They claimed that the new practice was in violation of the third condition of the 1922 Commission order. They accordingly sought to enjoin the defendants and "their respective officers, agents, representatives, servants, employees and successors," from disobeying the order, especially the third condition thereof, and to force the defendants to permit them to move their cars with their own power and crews. The Commission was allowed to intervene as a party plaintiff; its intervening complaint also prayed for an

[1] *Baltimore & O. R. Co.* v. *United States* (unreported), United States District Court for the Northern District of Illinois, Eastern Division, Equity No. 3427, January 15, 1929. The court approved the Commission order as amended in 150 I. C. C. 32. That amendment is not germane to this case.

injunction against the alleged violation of the third condition by the defendants and their employees.[2]

A stipulation of facts was then filed. After describing the change in handling the cars, it pointed out that this change resulted from a settlement between the River Road and the Brotherhood of Railroad Trainmen of a labor dispute over the work involved in these livestock car movements. The Brotherhood was the bargaining agent under the Railway Labor Act for the River Road trainmen. It made a demand, based upon its contract with River Road, that these trainmen be given the work of moving and switching the livestock cars over the River Road trackage. The Brotherhood threatened to call a strike unless this demand was met before 10:30 p. m., January 23, 1946, a threat that was backed by an almost unanimous strike vote of the trainmen. Under this threat, River Road made an agreement with the Brotherhood shortly before the scheduled strike hour, as a result of which the River Road trainmen were to be permitted to move and switch the cars. The notice to the trunk line railroads of this change in practice subsequently followed.

The District Court thereupon issued a preliminary injunction as requested. Central, River Road and Junction, and "their respective officers, agents, representatives, employees and successors," were restrained from disobeying the 1922 Commission order and from violating the third condition of that order and were commanded to permit the trunk line railroads to move their cars over the River Road line with their own power and crews. The court concluded, as a matter of law, that the facts relative to

---

[2] The Commission based its complaint upon § 5 (8) of the Interstate Commerce Act, 49 U. S. C. § 5 (8), which authorizes the Commission to seek, and grants jurisdiction to the federal district courts to issue, injunctive or mandatory relief to restrain violation of or compel obedience to an order issued under § 5.

the labor dispute between the Brotherhood and River Road were "irrelevant and immaterial." [3]

Three days after the preliminary injunction became effective, the Brotherhood asked leave to file its special appearance for the purpose of moving to vacate the injunction and to dismiss the proceedings for failure to join the Brotherhood and its members as indispensable parties. This motion was denied.   River Road then filed its answer to the original complaint, pointing out that the changed arrangement resulted from the labor dispute with the Brotherhood and contending that this new practice did not violate the 1922 Commission order.   The Brotherhood thereafter filed its motion to intervene generally as a party defendant, alleging that the primary purpose of the suit was to nullify its agreement with River Road and to deprive the Brotherhood members of the work they were performing under that agreement and that the Brotherhood members were therefore indispensable parties.   The contention was made that the Brotherhood had an unconditional right to intervene by virtue of § 17 (11) of the Interstate Commerce Act [4] and Rule 24 (a) (2) of the Federal Rules of Civil Procedure; and 28 U. S. C. § 45a was later added in support of this contention.   But the motion to intervene was denied by order, without opinion.

The District Court then allowed an appeal to this Court from its order denying intervention.   The appellee railroads moved to dismiss the appeal on the ground that such an order was not final and hence was not appealable, the Brotherhood not being entitled to intervene as a

---

[3] On appeal by Junction, the Seventh Circuit Court of Appeals reversed the decree as to Junction, holding that Junction had no control over and nothing to do with the acts complained of by the appellees. *Baltimore & O. R. Co.* v. *Chicago Junction R. Co.*, 156 F. 2d 357.

[4] 54 Stat. 916, 49 U. S. C. § 17 (11).

matter of right. We postponed further consideration of the question of our jurisdiction to review the order to the hearing of the appeal upon the merits.

Ordinarily, in the absence of an abuse of discretion, no appeal lies from an order denying leave to intervene where intervention is a permissive matter within the discretion of the court. *United States* v. *California Canneries,* 279 U. S. 553, 556.[5] The permissive nature of such intervention necessarily implies that, if intervention is denied, the applicant is not legally bound or prejudiced by any judgment that might be entered in the case. He is at liberty to assert and protect his interests in some more appropriate proceeding. Having no adverse effect upon the applicant, the order denying intervention accordingly falls below the level of appealability. But where a statute or the practical necessities grant the applicant an absolute right to intervene, the order denying intervention becomes appealable. Then it may fairly be said that the applicant is adversely affected by the denial, there being no other way in which he can better assert the particular interest which warrants intervention in this instance. And since he cannot appeal from any subsequent order or judgment in the proceeding unless he does intervene, the order denying intervention has the degree of definitiveness which supports an appeal therefrom. See *Pipe Line Co.* v. *United States,* 312 U. S. 502, 508.

Our jurisdiction to consider an appeal from an order denying intervention thus depends upon the nature of the applicant's right to intervene. If the right is absolute, the order is appealable and we may judge it on its merits. But if the matter is one within the discretion of the trial

---

[5] See also *Ex parte Cutting,* 94 U. S. 14; *Credits Commutation Co.* v. *United States,* 177 U. S. 311; *Ex parte Leaf Tobacco Board of Trade,* 222 U. S. 578; *In re Engelhard,* 231 U. S. 646; *City of New York* v. *Consolidated Gas Co.,* 253 U. S. 219; *New York City* v. *New York Telephone Co.,* 261 U. S. 312.

court and if there is no abuse of discretion, the order is not appealable and we lack power to review it. In other words, our jurisdiction is identified by the necessary incidents of the right to intervene in each particular instance. We must therefore determine the question of our jurisdiction in this case by examining the character of the Brotherhood's right to intervene in the proceeding brought under § 16 (12) of the Interstate Commerce Act.

We start with Rule 24 (a) and (b) of the Federal Rules of Civil Procedure, applicable to a civil proceeding of this type. Rule 24 (a) deals with intervention of right and provides in pertinent part: "Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; . . . ." In contrast, Rule 24 (b) is concerned with permissive intervention and reads as follows: "Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

The Brotherhood claims that as a consequence of either of two federal statutes—§ 17 (11) of the Interstate Commerce Act or 28 U. S. C. § 45a—it has an absolute right to intervene within the meaning of Rule 24 (a) (1). It also alleges that it possesses an absolute right within the contemplation of Rule 24 (a) (2), the representation of its interest by existing parties being inadequate and the possibility that it may be bound by a judgment in the action being a real one. No claim to permissive intervention

under Rule 24 (b) is made; nor is there a contention that the District Court abused any discretion it might have had.

In our view, § 17 (11) of the Interstate Commerce Act does give the Brotherhood an absolute right to intervene in the instant proceeding within the meaning of Rule 24 (a) (1). As set forth in 54 Stat. 916,[6] this portion of the Act reads: "Representatives of employees of a carrier, duly designated as such, may intervene and be heard in any proceeding arising under this Act affecting such employees." The following considerations make obvious the fact that the Brotherhood meets all the requirements of this provision:

*First.* It is unquestioned that the Brotherhood is the duly designated representative of the River Road trainmen.

*Second.* The right of intervention granted to such a representative by § 17 (11) applies to a court proceeding under § 16 (12) of the Act, the plain language of § 17 (11) extending its reach to "any proceeding arising under this Act."

---

[6] As it appears in the United States Code, 49 U. S. C. § 17 (11), this paragraph reads: "Representatives of employees of a carrier, duly designated as such, may intervene and be heard in any proceeding arising under this chapter and chapters 8 and 12 of this title affecting such employees."

The words "this chapter" refer to Part I of the Interstate Commerce Act, which embodies the original statute known by that name prior to its division into parts. Chapter 8 relates to Part II of the Interstate Commerce Act, originally known as the Motor Carrier Act of 1935. Section 305 (h) of Part II is a cross-reference to § 17 of Part I: "All the provisions of section 17 of this title shall apply to all proceedings under this chapter." Chapter 12 is the equivalent of Part III of the Interstate Commerce Act, which deals with water carriers. Section 916 (a) is also a cross-reference to § 17 of Part I: "The provisions of section 12 and section 17 of chapter 1 of this title and sections 46–48 of this title shall apply with full force and effect in the administration and enforcement of this chapter."

On this point, however, the appellee railroads contend that § 17 (11) must be confined to proceedings before the Interstate Commerce Commission, to the exclusion of court proceedings. In support of this contention, they point to the fact that § 17 as a whole is primarily concerned with Commission procedure and organization. That fact is emphasized by the heading of § 17 as it appears in the Statutes at Large, 54 Stat. 913, and the United States Code, 49 U. S. C. § 17, a heading that reads: "Commission procedure; delegation of duties; rehearings." The inference is then made that paragraph (11), with which we are concerned, must be limited by that heading and by the general context of § 17 as a whole. The result of the contention is that the phrase "any proceeding arising under this Act," as found in paragraph (11), is rewritten by construction to refer only to "any proceeding before the Commission arising under this section."

We cannot sanction such a construction of these words. It is true, of course, that § 17 is concerned primarily with the organization of the Commission and its subdivisions and with the administrative disposition of matters coming within that agency's jurisdiction. At least ten of the twelve paragraphs of § 17 deal with those matters. And before § 17 was cast into its present form in 1940, all five of its paragraphs related exclusively to those matters. Congress rewrote the section when it enacted the Transportation Act of 1940, 54 Stat. 898, continuing and modifying previous provisions and consolidating and including matters which had formerly been scattered throughout the Act.[7] At the same time, however, it was expressly recognized that certain paragraphs were being added which were entirely new, paragraphs which went beyond purely administrative matters. Thus the pertinent com-

---

[7] H. Rep. No. 1217, 76th Cong., 1st Sess., p. 13; H. Rep. No. 2832, 76th Cong., 3d Sess., p. 72.

mittee reports stated [8] that "A new paragraph (9) is included providing that orders of a division, an individual Commissioner, or a board shall be subject to judicial review as in the case of full Commission orders, after an application for rehearing has been made and acted upon." And as to paragraph (11), it was said [9] that "A new paragraph is added at the end of section 17 providing that representatives of employees of a carrier may intervene and be heard in any proceedings arising under part I affecting such employees." By such language in their reports, the framers of § 17 recognized the obvious fact that certain provisions of that section deal with something more than might be indicated by the heading.

That the heading of § 17 fails to refer to all the matters which the framers of that section wrote into the text is not an unusual fact. That heading is but a short-hand reference to the general subject matter involved. While accurately referring to the subjects of Commission procedure and organization, it neglects to reveal that § 17 also deals with judicial review of administrative orders and with intervention by employee representatives. But headings and titles are not meant to take the place of the detailed provisions of the text. Nor are they necessarily designed to be a reference guide or a synopsis. Where the text is complicated and prolific, headings and titles can do no more than indicate the provisions in a most general manner; to attempt to refer to each specific provision would often be ungainly as well as useless. As a result, matters in the text which deviate from those falling within the general pattern are frequently unreflected in the headings and titles. Factors of this type have led to the wise rule that the title of a statute and

---

[8] H. R. No. 2016, 76th Cong., 3d Sess., p. 67; H. Rep. No. 2832, 76th Cong., 3d Sess., p. 72.

[9] H. Rep. No. 1217, 76th Cong., 1st Sess., p. 15.

the heading of a section cannot limit the plain meaning of the text. *United States* v. *Fisher,* 2 Cranch 358, 386; *Cornell* v. *Coyne,* 192 U. S. 418, 430; *Strathearn S. S. Co.* v. *Dillon,* 252 U. S. 348, 354. For interpretative purposes, they are of use only when they shed light on some ambiguous word or phrase. They are but tools available for the resolution of a doubt. But they cannot undo or limit that which the text makes plain.

Here the meaning of § 17 (11) is unmistakable on its face. There is a simple, unambiguous reference to "any proceeding arising under this Act" or, as the House committee paraphrased it,[10] to "any proceedings arising under part I." There is not a word which would warrant limiting this reference so as to allow intervention only in proceedings arising under § 17 or in proceedings before the Commission. The proceedings mentioned are those which arise under this Act, an Act under which both judicial and administrative proceedings may arise.[11] The instant case is a ready illustration of a judicial proceeding arising under this Act; a suit of this nature is authorized solely by § 16 (12) of the Act.[12] Hence it is a proceeding to which the right of intervention may attach by virtue of § 17 (11).

Nor do we perceive any reason of statutory policy why the framers of § 17 (11) should have wished to confine the right of intervention by employee representatives to pro-

[10] H. Rep. No. 1217, 76th Cong., 1st Sess., p. 15.

[11] Section 17 (11), by referring to proceedings arising under "this Act," also affects judicial and administrative proceedings arising under Parts II and III of the Act. See note 6, *supra.*

[12] Section 16 (12) is labeled "Proceedings to enforce orders other than for payment of money." 49 U. S. C. § 16 (12). It provides that if any carrier fails to obey a Commission order other than for the payment of money, the Commission, any injured party or the United States may apply to a federal district court for the enforcement of the order.

ceedings before the Commission. Occasions may arise, as in this case, where the employee representatives have no interest in intervening in the original administrative proceeding, but where they have a very definite interest in intervening in a subsequent judicial proceeding arising under the Act. When the framers have used language which covers both types of proceedings, we would be unjustified in formulating some policy which they did not see fit to express to limit that language in any way.

*Third.* This is a proceeding arising under the Act which affects the employees represented by the Brotherhood. Nothing could make this plainer than the fact that direct injunctive relief was sought and obtained against these employees. The appellee railroads sued to enjoin River Road and its employees from disobeying the third condition of the 1922 Commission order. It was alleged that this condition required River Road and its employees to permit the railroads to use their own power and crews in moving cars over the River Road line. Yet that was precisely the subject matter of the conflict between River Road and the Brotherhood, resulting in the insertion of important provisions in the contract between them. If the Commission order did require the River Road employees to forego operating the livestock cars, their contract rights with River Road were affected in a very real sense. Acts done by the employees in performance of this contract obviously prompted this suit; and any such acts performed after the issuance of an injunction might give rise to contempt action. It is thus impossible to say that this proceeding is not one "affecting such employees" within the meaning of § 17 (11).

Since all the conditions of § 17 (11) have been satisfied in this case, the only question that remains is whether the Brotherhood is thereby accorded a permissive or an absolute right to intervene. The language of § 17 (11) is in

terms of "may intervene and be heard," which might be construed as giving only a discretionary right. But our view, as we have indicated, is that once the requirements of § 17 (11) have been met, the employees' representative acquires an absolute right of intervention.

Some statutes speak of intervention "as of right." Thus where suit is brought by or against the United States to enforce or set aside a Commission order, the Commission or the parties in interest to the proceeding before the Commission "may appear as parties thereto . . . as of right." 28 U. S. C. § 45a. In such a case, the right to intervene is absolute and unconditional. *Sprunt & Son* v. *United States,* 281 U. S. 249, 255.

No less absolute or unconditional is the right to intervene under § 17 (11), which permits intervention where the employees are affected by the proceeding. To be sufficiently affected within the meaning of this provision requires that the employees be prejudiced or bound by any judgment that might be entered in the case, as is the situation relative to the River Road employees. Once it is clear that an effect of that degree is present, however, there is no room for the operation of a court's discretion. Whether the employees' interests should be asserted or defended in a proceeding where those interests are at stake is a question to be decided by the employees' representative, not by the court. The statutory term "may intervene" thus means "may intervene if the employees' representative so chooses" rather than "may intervene in the discretion of the court." And if the representative does choose to intervene, it may do so as a matter of right within the meaning of Rule 24 (a) (1) of the Federal Rules of Civil Procedure. Such is this case.

We thus conclude that § 17 (11) gives the Brotherhood an absolute right to intervene in this proceeding, making it unnecessary to discuss whether, and to what extent, the

Brotherhood would have had such a right apart from § 17 (11). It follows that we have jurisdiction to consider the appeal on its merits. And in the exercise of that jurisdiction, we reverse the judgment of the District Court denying leave to the Brotherhood to intervene.

*Reversed.*