IN RE ESTATE OF JAMES P. WALLACE.
UNITED STATES OF AMERICA, APPELLANT, V. RENNE EDMUNDS, ADMINISTRATOR OF THE ESTATE OF JAMES P. WALLACE, DECEASED, APPELLEE.
182 N. W. 2d 829

Filed January 8, 1971. No. 37599.

William D. Ruckelshaus, Richard A. Dier, Robert J.

Becker, Alan S. Rosenthal, Robert M. Feinson, and Morsman, Fike, Sawtell & Davis, for appellant.

Clarence A. H. Meyer, Attorney General, Bernard L. Packett, and Richard L. Johnson, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

This appeal concerns the interpretation of a federal statute governing the federal government's right to a deceased veteran's intestate estate.

The deceased, an 89-year-old Spanish-American War veteran, was admitted to the Veterans' Hospital in Omaha, Nebraska, on June 2, 1967. After a dismissal, and subsequent readmittance, Wallace was transferred from the hospital to a private nursing home, the Bellevue Leisure Manor, for nursing and home care at United States' government and the Veterans' Administration expense. The Veterans' Administration paid for the service pursuant to a contract between the government and the home. He died intestate and without heirs at Bellevue Leisure Manor on September 9, 1967, leaving an estate of around $3,500. The district court held that the estate escheated to the State of Nebraska and the federal government has filed this appeal. We reverse the judgment of the district court.

The applicable federal statute, 38 U.S.C.A., section 5220(a), page 251, provides as follows: "Whenever any veteran * * * shall die while a member or patient in any facility, or any hospital while being furnished care or treatment therein by the Veterans' Administration, and shall not leave surviving him any spouse, * * * or heirs entitled, under the laws of his domicile, * * * as to which he dies intestate, all such property, * * * not disposed of by will or otherwise, shall immediately vest in and become the property of the United States as trustee for the sole use and benefit of the General Post Fund * * *."

It seems clear from the plain language of this statute, undisputedly applicable here, that the deceased did die intestate and without heirs while a member or patient in a facility, while being furnished care or treatment therein by the Veterans' Administration. The provisions of this statute take precedence over the escheat laws of the various states. United States v. Oregon, 366 U. S. 643, 81 S. Ct. 1278, 6 L. Ed. 2d 575. The deceased was receiving institutional care, within the terms of the statute, being furnished (at the expense of) by the Veterans' Administration in the nursing home. He was initially admitted to the Veterans' Hospital in Omaha, transferred to Bellevue Leisure Manor, pursuant to 38 U.S.C.A., section 620, page 63 (Cum. Supp., 1970), when the Veterans' Administration decided that he had received the maximum benefit from hospital care but still would require an extended period of nursing home care.

The State's contention is that the applicable section only applies when the deceased was receiving care from a facility which is under the direct and exclusive administrative jurisdiction of the Veterans' Administration. In interpreting statutes, the function of the courts is to construe the language so as to give effect to the intent of Congress. The basic rule in the interpretation of the statute is to ascertain the legislative intent from the whole act and to give effect to it if it is a lawful one. United States v. American Trucking Assn., Inc., 310 U. S. 534, 60 S. Ct. 1059, 84 L. Ed. 1345; State ex rel. Meyer v. County of Lancaster, 173 Neb. 195, 113 N. W. 2d 63. Turning to 38 U.S.C.A., section 5223, page 256, it provides: "Disbursements from the Fund shall be made by the Division of Disbursements, Treasury Department, upon the order and within the discretion of the Administrator for the benefit of members and patients *while being supplied care or treatment by the Veterans' Administration in any facility or hospital. The authority contained in the preceding sentence is not limited to facilities or hospitals under direct administra-*

*tive control of the Veterans' Administration."* (Emphasis supplied.)

Construing the whole act it seems to us that Congress intended to disclaim expressly any possible suggestion that by use of the words "any facility or hospital" in the act that it referred to only institutions under the direct administrative control of the Veterans' Administration. It would also appear that a statute should be given a reasonable construction in order to accomplish its purpose, and it seems plain that the operation of the section should not be controlled or defeated by the fortuitous circumstance that the veteran's condition has reached the point where care in a nursing home was determined to be preferable to continued hospital care or that he was transferred there because of overflow in regular Veterans' Administration facilities, under the terms of the statute above referred to (38 U.S.C.A., § 620, p. 63 (Cum. Supp., 1970)).

The congressional purpose of the act is that where a veteran dies intestate and without heirs while being furnished with institutional treatment or care by the Veterans' Administration, his personal property should be employed, through the vehicle of the General Post Fund, for the benefit of other veterans who are institutionalized. United States v. Oregon, *supra*. We feel that it would be irrational to conclude that the effectuation of this purpose permits a distinction to be made between, on one hand, a veteran who is being treated or cared for by the Veterans' Administration in its own and directly controlled facilities to the day of his death, and, the veteran on the other hand who, like the deceased here, shortly before his death, is transferred from a Veterans' Administration hospital to a private facility for continued care at Veterans' Administration expense. We feel that the determinative factor, under the statute, is simply that at the time of his death, he was receiving institutional treatment or care being furnished by the Veterans' Administration either in one of its own facil-

ities or in some other facility better adapted to meet his particular needs. It is reasonable to assume that there was congressional recognition of this fact when it used the phrase *"any* facility or *any* hospital" in 38 U.S.C.A., section 5220(a), page 251.

We have examined the other contentions of the State and they are without merit. The contention that 38 U.S.C.A., section 5209, page 250, is applicable cannot be supported. By its terms the definition of facility or Veterans' Administration facility as used in such subchapter is specifically limited to subchapter 1 of the act. The section we are called upon to construe, section 5220, appears in subchapter 2, and the limitation to subchapter 1 invites the suggestion that a different and broader interpretation is proper in section 5220. Again the contention that the heading or title to the section or subchapter is controlling cannot be sustained. See Brotherhood of Railroad Trainmen v. Baltimore & O. R.R. Co., 331 U. S. 519, 67 S. Ct. 1387, 91 L. Ed. 1646. It further appears that the administrative interpretation and the regulations enacted by the Veterans' Administration pursuant to the date section 5220(a) was enacted into law in 1941 sustains the government's contention as to the meaning, the purpose, and the application of the act to the case here.

The State here has invited this court to give 38 U.S.C.A., section 5220(a), page 251, a reading which is at odds with the plain terms of the section, its consistent administrative interpretation, and also attributes to Congress an irrational purpose. The State has furnished us no rational basis upon which we could conclude that Congress might have intended that veterans such as the deceased herein, Wallace, should be treated differently for vesting purposes of his estate.

For the foregoing reasons, the judgment and decree of the district court herein are reversed and the cause remanded.

REVERSED AND REMANDED.