IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————————

No. 95-60081

Summary Calendar

———————————————

FRANCISCO ESCOBAR, JR.,

                                        Petitioner,

versus

UNITED STATES DEPARTMENT
OF AGRICULTURE,

                                        Respondent.

———————————————

Petition for Review of the Decision of the
United States Department of Agriculture
(93-68)

———————————————

August 23, 1995

Before HIGGINBOTHAM, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

     Returning to Nogales, Arizona from a fishing trip in Mexico,

Francisco Escobar, Jr., was stopped by agents of the U.S. Customs

Service and APHIS PPQ officers.  The officers asked him whether he

was bringing any agricultural products back from Mexico.  Escobar

answered that he had some filets of fish and some wooden statues,

but nothing more.  Subsequently, the agents searched the motor home

————————————————————

[*]Local Rule 47.5 provides:  "The publication of opinions that
have no precedential value and merely decide particular cases on
the basis of well-settled principles of law imposes needless
expense on the public and burdens on the legal profession."
Pursuant to that Rule, the Court has determined that this opinion
should not be published.

he was driving and found some potatoes and chorizo that Escobar had purchased in the United States before going on his fishing trip. The agents offered Escobar the opportunity to pay an on-the-spot fine of $25 to $50 for bringing banned food products over the border from Mexico. Escobar refused.

The Acting Administrator of the Animal and Plant Health Inspection Service subsequently filed a complaint against him seeking a $2,000 civil penalty and alleging violations of four federal regulations -- 7 C.F.R. § 321.3(b),[1] 7 C.F.R. § 321.3(c),[2] 7 C.F.R. § 321.7,[3] and 9 C.F.R. § 94.9(b).[4] After a hearing, an ALJ found that Escobar had indeed brought the potatoes and chorizo into the United States without declaring them, but that the potatoes and chorizo were of United States origin. She found that Escobar had violated only one of the four cited regulations, and ordered a $250 civil penalty. Both APHIS and Escobar appealed to the Judicial Officer. The JO determined that Escobar had violated all four regulations, and ordered a $2,000 civil penalty. Escobar now appeals. We affirm.

---

[1] 7 C.F.R. § 321.3(b) forbids "entry" of potatoes without "an original certificate."

[2] 7 C.F.R. § 321.3(c) provides that potatoes may not be "admitted" without a permit designating the port of entry.

[3] 7 C.F.R. § 321.7 requires notification of the Secretary upon the "arrival" of the potatoes.

[4] 9 C.F.R. § 94.9(b) forbids "import[ing]" into the United States any pork or pork products from a country where hog cholera is known to exist unless certain specified requirements are met.

Escobar's principal argument is that he did not violate the regulations. He argues that the regulations were promulgated to control the importation of foreign products, not the return of American products such as his over the border from Mexico. This interpretation of the regulations, he argues, is the only one that makes sense, and it is supported by the ALJ's finding that one of the government's expert witnesses stated that the regulations would not be violated if the potatoes and chorizo came from the United States. (The witness, the assistant officer-in-charge in El Paso, conceded that he was not an expert on legal questions.)

However, the plain language of the regulations is against Escobar. Although he may well be correct that the regulations were drafted in order to prevent the importation of foreign agricultural products, nothing in the clear language of the regulations limits them to that function. The potato quarantine regulation imposes a broad ban on the "admi[ssion]" or "entry" of potatoes over the border from Mexico without proper documentation and notification. 7 C.F.R. §§ 321.3(a)-(c), 321.7(a). The broad ban grants some limited exceptions, for example, for the importation of potatoes from Bermuda, or from parts of Canada. 7 C.F.R. §§ 321.8, 321.9. There is no exception in the regulations for potatoes grown in the United States. Similarly, the regulatory ban against importing pork or pork products into the United States provides for no applicable exception for chorizo that originates in the United States. 9 C.F.R. § 94.9(a)-(c). In short, we cannot accept Escobar's invitation to search for the intent of regulations'

3

drafters where the regulations are as clear and unambiguous as they are here.

To counter the text of the three potato regulations, Escobar relies upon the title of the potato regulations: "Subpart -- Foreign Potatoes." 7 C.F.R. § 321.1 (heading). Headings can be useful interpretative guides when the text of a regulation is ambiguous, but here the regulations are clear. "[T]he title of a statute and the heading of a section cannot limit the plain meaning of the text." Brotherhood of R.R. Trainmen v. Baltimore & O.R.R., 331 U.S. 519, 528-29 (1947). Escobar also protests that he could not have complied with the regulations' commands to obtain a certificate of inspection or a permit, because those are available only to importers of foreign products. We agree, but this does not mean Escobar could not have complied with the regulations. Since the regulations prohibited the entry of his potatoes and chorizo without proper documentation, and since he could not obtain that documentation, the regulations in effect banned his potatoes and chorizo from being brought across the border and required him to simply dispose of them at the border.

The Department of Agriculture's interpretation of its own regulations is entitled to great deference if it is not unconstitutional or in conflict with a federal statute. See Chevron U.S.A. v. Natural Res. Def. Counsel, 467 U.S. 837 (1984). Without such a strict construction of its regulations, the Department of Agriculture would have difficulty preventing the spread of hog cholera or potato pests, because once American

4

potatoes or chorizo enter countries like Mexico, it is impossible to tell whether those American products have become contaminated, commingled with, or exchanged for other potatoes or pork products, either intentionally or not. Accordingly, we defer to the Department of Agriculture's reading of its own regulations.

Escobar also raises four other arguments. First, he argues that the JO found him guilty of all the violations charged because he failed to declare his potatoes and sausage. Escobar mischaracterizes the JO's decision. The JO found that Escobar violated the regulations by bringing the potatoes and chorizo into the Unites States, whether or not Escobar declared them. The JO simply noted that had Escobar declared them, that might have been a mitigating circumstance in Escobar's favor.

Second, Escobar argues that he was not properly notified of the government's intent to prosecute him for violating the potato regulations. The citation he received at the border stated that he had violated 7 C.F.R. § 319.56. Because he was not found in violation of this section, but was instead found in violation of other, related potato regulations, he argues that he was never given sufficient notice.

We find the notice in this case sufficient. The regulation that the agents cited at the border is the opening regulation in the section regulating the quarantine on fruits and vegetables, including potatoes. Although not exact, the citation was sufficient to ensure that Escobar could reasonably understand the nature of the charges. See <u>Aloha Airlines, Inc. v. Civil</u>

5

<u>Aeronautics Bd.</u>, 598 F.2d 250, 262 (D.C. Cir. 1979) ("Pleadings in administrative proceedings are not judged by the standards applied to the indictment at common law.") (citing 2 K. Davis, Administrative Law Treatise § 8.04 at 525 (1958)). In any event, the formal complaint issued after the border stop informed Escobar of the exact regulations at issue.

Third, Escobar challenges the size of the sanction. The JO improperly based the $2,000 penalty assessment on the damage that Escobar's potatoes and chorizo could have caused, Escobar argues. Because Escobar was able to prove to the ALJ that his American potatoes and chorizo could not have caused any damage and that they did not in fact commingle with any Mexican food products, Escobar argues that the $2,000 penalty assessed against him is unwarranted.

However, the JO's point was not that the potatoes and chorizo actually caused any damage. The Department of Agriculture concedes that they were harmless. Rather, the point is that the border agents could not have known at the time of the border stop whether Escobar's food was harmless or infested. Even if the border agents had known that the potatoes and chorizo were of American origin, they could not have known at the border whether Escobar had commingled his food with Mexican food products, contaminated his food, or exchanged his food for Mexican food products, intentionally or not. A single piece of infested pork or a single infested potato can start an infestation in America, imposing on this country the extremely high costs of controlling and eradicating the spread of the disease.

6

The acts that the regulations at issue administer authorize a $1,000 maximum civil penalty for each violation. 7 U.S.C. § 163; 21 U.S.C. § 122. In this case, the Secretary assessed Escobar a $500 civil penalty for each of the violated regulations, only one half of the maximum statutory penalty. "[W]here Congress has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy the relation of the remedy to policy is peculiarly a matter for administrative competence." Butz v. Glover Livestock Comm'n Co., 411 U.S. 182, 185 (1973) (internal quotations omitted). Because the sanction was neither unwarranted in law nor without factual justification, we defer to the Department of Agriculture's appropriate assessment of the sanction.

Finally, Escobar challenges the regulations as void for vagueness. If even the government's own expert witness could, on the stand, erroneously interpret the regulations so as not to cover Escobar's conduct, the regulations are fatally vague, he argues.

Yet we find the regulations clear, and the expert witness's and Escobar's interpretations clearly wrong. Although the regulations never explicitly state that they apply to American products returning from Mexico, they do impose a clear uniform prohibition on the entry or admission of potatoes and chorizo from Mexico without proper documentation and notification. They state no applicable exceptions. Regulations, like statutes, "are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within

7

their language." United States v. National Dairy Products Corp.,

372 U.S. 29, 32 (1963).

Accordingly, we AFFIRM.