Slip Op. 06-157

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                              :
NSK LTD., et al.,                             :
                                              :
            Plaintiffs,                       :
                                              :          Before:          WALLACH, Judge
      v.                                      :          Consol. Court No.:   04-00519
                                              :
UNITED STATES,                                :
                                              :          **PUBLIC VERSION**
            Defendant,                        :
                                              :
and                                           :
                                              :
TIMKEN US CORPORATION,                        :
                                              :
            Defendant-Intervenor.             :
_____           :

[United States Department of Commerce's Remand Determination on Antifriction Bearings and
Parts Thereof from France, Germany, Italy, Japan, Singapore, and the United Kingdom is
AFFIRMED.]

                                              **DATED:** October 23, 2006

Crowell & Moring, LLP, (Matthew Philip Jaffe, Robert A. Lipstein, Alexander H. Schaefer and
Sobia Haque) for Plaintiffs NSK Ltd., NSK Corp., and NSK Precision America, Inc.

Baker & McKenzie, LLP, (Donald J. Unger, Diane A. MacDonald, Paul E. Amberg, and Louisa
Vassileva Carney) for Plaintiffs NTN Corp., NTN Bearing Corp. of America, American NTN
Bearing Manufacturing Corp., NTN-Driveshaft, Inc., and NTN-BCA Corp.

Sidley Austin LLP, (Neil R. Ellis and Neil C. Pratt) for Plaintiffs Koyo Seiko Co., Ltd., and
Koyo Corp. of U.S.A.

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; Patricia M. McCarthy,
Assistant Director; Michael D. Panzera, Attorney, Commercial Litigation Branch, Civil Division,
U.S. Department of Justice; and Jennifer I. Johnson, Attorney-Advisor, Office of Chief Counsel
for Import Administration, U.S. Department of Commerce, for Defendant United States.

Stewart and Stewart, (Terence P. Stewart, William A. Fennell, Lane S. Hurewitz, and Geert De
Prest) for Defendant-Intervenor Timken US Corporation.

# I
# INTRODUCTION

This matter comes before the court following its remand of January 31, 2006, to the United States Department of Commerce ("the Department" or "Commerce"). In NSK Ltd. v. United States, 416 F. Supp. 2d 1334 (CIT 2006) ("NSK I"), the court remanded Commerce's findings in Antifriction Bearings and Parts Thereof From France, Germany, Italy, Japan, Singapore, and the United Kingdom: Final Results of Antidumping Duty Administrative Reviews, Rescission of Administrative Reviews in Part, and Determination To Revoke Order in Part, 69 Fed. Reg. 55,574 (September 15, 2004) ("Final Results").

In NSK I, this court held that Commerce's denial of Koyo's negative lump-sum billing adjustments was not in accordance with law. NSK I, 416 F. Supp. 2d at 1342. In addition, the court held that Commerce's determination that sales by NTN Corp., NTN Bearing Corp. of America, American NTN Bearing Manufacturing Corp., NTN Driveshaft, Inc., and NTN-BCA Corp. (collectively "NTN") were made in the ordinary course of trade was not supported by substantial evidence and not in accordance with law. Id. at 1344. On April 1, 2006, Commerce filed its Remand Determination stating and explaining its decision to deny all of Koyo's lump-sum billing adjustments and its determination that NTN's reported high profit sales were not transactions "outside the ordinary course of trade." Remand Determination NSK Ltd. v. United States, Consol. Court No. 04-00519 at 2-14 (March 31, 2006) ("Remand Determination").

Plaintiffs, Koyo Seiko Co. Ltd., and Koyo Seiko Corp. of U.S.A (collectively "Koyo"); NTN; and NSK Ltd., NSK Corp., and NSK Precision America, Inc. (collectively "NSK") filed their respective responses to the Remand Determination on May 3, May 8, and June 13, 2006.

Defendant-Intervenor Timken US Corporation ("Timken") filed its response to the Remand Determination on June 5, 2006. The Department filed its Response to Comments on Redetermination Pursuant to Remand ("Defendant's Response") on June 8, 2006.

This court has jurisdiction pursuant to 28 U.S.C. § 1581(c). For the reasons set forth below, Commerce's Remand Determination is affirmed.

**II**
**BACKGROUND**

On September 15, 2004, Commerce published in the Federal Register the Final Results of the May 1, 2002, through April 30, 2003, review of the antidumping duty orders on antifriction bearings and parts thereof from France, Germany, Italy, Japan, Singapore, and the United Kingdom. Final Results, 69 Fed. Reg. at 55,574. In the Final Results, Commerce found Koyo's allocation to be "'unreasonably distortive' because the billing adjustments 'were incurred during time periods that did not correspond to the POR [period of review]' and because Koyo reported adjustments on all models, even when not incurred on all of them." NSK I, 416 F. Supp. 2d at 1341 (citing Defendant's Supplemental Brief at 1-2). Based on this finding, Commerce rejected Koyo's negative billing adjustments, but accepted Koyo's positive adjustments to provide an incentive to report these adjustments in the most specific and non-distortive manner feasible. Defendant's Response at 3 (citing Issues and Decision Memorandum for the Antidumping Duty Administrative Review of Antifriction Bearings (Other than Tapered Roller Bearings) and Parts Thereof from France, Germany, Italy, Japan, Singapore, and the United Kingdom for the Periods of Review May 1, 2002, through April 30, 2003, Memorandum to James J. Jochum from Jeffrey A. May (September 15, 2004) ("Issues and Decision Memo") at cmt. 21). In the Final Results,

3

Commerce also denied NTN's proposed exclusion of certain home market sales based on its findings that NTN did not provide any evidence suggesting "that these sales have characteristics that would make them outside the ordinary course of trade." Remand Determination at 7 (citing Issues and Decision Memo at cmt. 33).

The court remanded the matter to Commerce to reexamine its analysis and provide an adequate explanation of its differential treatment of Koyo's positive and negative billing adjustments. NSK I, 416 F. Supp. 2d at 1342. The court also instructed Commerce to further explain its reasoning why it denied NTN's claim that its high profit sales were outside the ordinary course of trade. Id. at 1344.

**III**
**STANDARD OF REVIEW**

This court will sustain Commerce's determinations, findings, or conclusions unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." Fujitsu Gen. Ltd. v. United States, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B) (2004)). Substantial evidence has been defined as "'more than a mere scintilla,' as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Nippon Steel Corp. v. United States, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed 126 (1938)). Under this standard, the court does not weigh the evidence nor will it substitute its own judgment for that of the agency. See Negev Phosphates, Ltd. v. United States, 12 CIT 1074, 1076-77, 699 F. Supp. 938 (1988).

Where Congress' purpose or intent is not clear or nonexistent, the court makes a

4

determination of the lawfulness of an agency's statutory construction under <u>Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.</u>, 467 U.S. 837, 842-43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). Whenever Congress has "explicitly left a gap for the agency to fill," the agency's regulation is "given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." <u>Id.</u> at 843-44. Furthermore, the Court of Appeals for the Federal Circuit has held that statutory interpretations articulated by Commerce during its antidumping proceedings are entitled to judicial deference under <u>Chevron</u>. <u>Pesquera Mares Australes Ltd. v. United States</u>, 266 F.3d 1372, 1382 (Fed. Cir. 2001).

**IV**
**ANALYSIS**
**A**
**Commerce's Decision to Deny All of Koyo's Lump-Sum Billing Adjustments is Supported by Substantial Evidence**

In <u>NSK I</u>, this court held that Commerce's denial of Koyo's negative lump-sum billing adjustments was not supported by substantial evidence and in accordance with law. <u>NSK I</u>, 416 F. Supp. 2d at 1342. The basis of the court's holding was that "[t]here has been no factual showing that Koyo is able to produce more specific data on the particular allocation of its billing adjustments, and Commerce has presented no legal or factual basis to deny only the negative adjustments as an 'incentive.'" <u>Id.</u>

In its Remand Determination, Commerce denied both Koyo's positive and negative lump-sum billing adjustments in order to prevent differential treatment. Remand Determination at 2. Commerce argues that the court did not direct it to grant all of Koyo's billing adjustments, but focused solely upon Commerce's differential treatment analysis. Defendant's Response at 6. In support, Commerce states that had the court intended for Commerce to only provide more

explanation it would have used the same language as it remanded NTN's high profit sales issue. Remand Determination at 6. Furthermore, Commerce explains that since the court did not address the validity of Commerce's threshold determination regarding the allocation methodology itself, it remedied the differential treatment by denying both Koyo's positive and negative adjustments. Defendant's Response at 8.

Koyo argues that Commerce's Remand Determination is inconsistent with the court's remand opinion and the court should remand this proceeding again. Comments of Plaintiffs Koyo Seiko Co., Ltd. and Koyo Corporation on the Remand Determination of the Department of Commerce at 2 ("Koyo's Comments"). Koyo claims that the court's intent was for Commerce to rectify its differential treatment of the billing adjustments by granting, not denying, all of Koyo's lump sum billing adjustments. Id. at 2-3. To support its claim, Koyo points to a caption of one section of the remand order entitled, "Koyo's Negative Billing Adjustments Were Unreasonably Disallowed By Commerce." Id. (quoting NSK I, 416 F. Supp. 2d at 1340).

Defendant-Intervenor Timken argues that the court's remand order did not mandate a particular methodology and therefore the Department may adopt its original remedy so long as it provides sufficient justification that highlights the inaccuracy of Koyo's reporting and the particular nature of the adjustments claimed. Comments of Timken US Corporation on Commerce's Remand Determination at 2.

Commerce's decision to deny both Koyo's positive and negative lump-sum billing adjustments due to Koyo's inability to support its reporting methodology is supported by substantial evidence and is in accordance with law. In denying Koyo's billing adjustments, Commerce analyzed whether Koyo was accurately reporting its data and found that Koyo had the

6

capacity to enter the relevant information concerning billing adjustments electronically.

Defendant's Response at 12. Commerce examined the time periods when the billing adjustments were incurred and found that they did not correspond to the period of review.[1] Id. at 10. Under the substantial evidence standard of review applicable here, Commerce has properly explained its reasoning and also provided a reasonable explanation for denying all of Koyo's lump-sum billing adjustments. Consol. Edison v. NLRB, 305 U.S. at 229; accord Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 933 (Fed. Cir. 1984) (explaining that "substantial evidence" is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion).

The existence of substantial evidence is determined "by considering the record as a

---

[1] Koyo's claim that Commerce disregarded the court's order by citing to a section heading within the opinion is without merit. The court instructed Commerce as to its obligations on Remand and Commerce has complied. NSK I, 416 F. Supp. 2d at 1342.

Further, no decision exists in isolation, and no heading within an opinion may be interpreted in a vacuum. Dicta are "[w]ords of an opinion entirely unnecessary for the decision of the case." BLACK'S LAW DICTIONARY 1072 (6th ed. 1990). They include a "remark made, or opinion expressed, by a judge, in his decision upon a cause, 'by the way,' that is, incidentally or collaterally, and not directly upon the question before him, or upon a point not necessarily involved in the determination of the cause, or introduced by way of illustration, or analogy or argument." Grubka v. Dep't of the Treasury, 858 F.2d 1570, 1575 (Fed. Cir. 1988); see Kastigar v. United States, 406 U.S. 441, 454-55, 92 S. Ct. 1653, 1662, 32 L. Ed. 2d 212 (1972) (stating that broad language in an opinion unnecessary for the decision cannot be considered binding authority); Smith v. Orr, 855 F.2d 1544, 1550 (Fed. Cir. 1988) ("[I]t is well established that a general expression in an opinion, which expression is not essential to the disposition of the case, does not control a judgment in a subsequent proceeding."). Accordingly, the headings demarcating separate sections within an opinion are dicta and not binding under the doctrine of stare decisis. Dictum is not part of the holding of a decision, and is not binding on courts that are obligated to follow the precedent decision. See, e.g., Dow Jones & Co. Inc. v. Dep't of Justice, 908 F.2d 1006, 1011 n.4 (D.C. Cir. 1990) (dictum is not binding); Cf. Bhd of R.R. Trainmen v. Balt. & O.R. Co., 331 U.S. 519, 528-29, 67 S. Ct. 1387, 91 L. Ed. 1646 (1947) ("[H]eadings and titles are not meant to take the place of the detailed provisions of the text . . . the title of a statute and the heading of a section cannot limit the plain meaning of the text."). "[This is] a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used." Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 399-400, 5 L. Ed. 257 (1821).

whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'" Hontex Enterprises, Inc., v. United States, 342 F. Supp. 2d 1225, 1228 (CIT 2004) (citing Huaiyin Foreign Trade Corp. v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003)). This court will not second guess reasonable decisions supported by substantial evidence. Commerce's decision to deny all of Koyo's lump-sum billing adjustments is affirmed.

**B**
**Commerce's Decision Not to Exclude NTN's High Profit Sales is in Accord With the Law**

In NSK I, this court held Commerce's determination that NTN's sales were not outside the ordinary course of trade was neither supported by substantial evidence nor in accordance with law. NSK I, 416 F. Supp. 2d at 1344. The court concluded that Commerce failed to provide adequate reasoning concerning why it denied NTN's adjustments in light of the evidence and precedent supporting NTN's position, and specifically, why NTN's high profit sales, sold in minute quantities in comparison with NTN's usual commercial quantities, were not outside the ordinary course of trade. Id. Thus, the court instructed Commerce to further explain its reasoning as to why the evidence submitted by NTN was insufficient under governing law. Id.

In its Remand Determination, Commerce argued that it followed the court's instructions and further explained its decision that NTN's high profit sales were not "outside the ordinary course of trade." Remand Determination at 6-14. Commerce states that the high profit sales were not made in "'minute' or low quantities," but instead represented a significant portion of overall sales made by NTN. Id. at 9. To support its position, Commerce conducted a statistical analysis to determine the quantity with which NTN's home market sales database had high profit sales. Id. at 6-14, et seq.; Attachment to Draft Remand Redetermination. Commerce examined the

following factors: profit, frequency of sales, and volume of transactions. Id. Commerce

determined that even when high profit sales are compared to other sales of the same model, sold

to the same customer, reported by NTN as "normal" sales, they were not sold in unusual or

aberrationally low quantities which would indicate that the sales were outside the ordinary course

of trade. Id. at 14. In addition, Commerce explained in its Remand Determination that selling

bearings as replacement parts is not in any way unusual or extraordinary because bearings are

subject to breakage and are likely to be replaced over time. Id. at 11.

Commerce also argues that it may consider sales to be outside the ordinary course of

trade, based on an evaluation of all the circumstances particular to the sales in question, if

Commerce determines that "such sales have characteristics that are extraordinary of the market in

question." Defendant's Response at 16-17 (quoting 19 U.S.C. § 1677(15); 19 C.F.R. §

351.102(b)). Finally, Commerce argues that it has the discretion to rely on other factors besides

high profits in its "totality of the circumstances" analysis. Defendant's Response at 19 (citing

NTN Corp. v. United States, 306 F. Supp. 2d 1319, 1346 (CIT 2004); see NTN Corp., v. United

States, 24 CIT 385, 428, 104 F. Supp. 2d 110, 147 (2000)).

NTN argues that its high profit sales were indeed outside the ordinary course of trade and

requests that the court order Commerce to exclude such sales from its margin calculations.

Plaintiff's Response to the Order Regarding Remand Comments at 2 ("NTN's Response"). To

support its claim, NTN asserts that Commerce refused to designate a profit level above which

sales may be considered high profit sales, or to state a reason why it believes that NTN's chosen

profit level is inappropriate for that market. Id. at 2, 4. In addition, NTN argues that Commerce's

number of high profit sales per day in its statistical analysis is meaningless and that the figure is

9

"minuscule" when averaged over the number of days in the month and compared to the number of pieces sold in NTN's production runs. Id. at 6. Finally, NTN argues that its high profit sales were outside the ordinary course of trade because the sales reflected unique circumstances, having been made "on a spot or intermittent basis for replacement, emergency, expedited delivery or test sales." Id. at 7.

Commerce's decision to not exclude NTN's high profit sales as outside the ordinary course of trade is properly based upon a finding that NTN did not provide "any evidence suggesting that these sales have any characteristics that would make them extraordinary for the home market is supported by substantial evidence and in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(2004). Commerce's analysis demonstrates that it acted reasonably and is therefore entitled to deference. Ceramica Regiomontana v. United States, 10 CIT 399, 404-05 (1986); see, e.g., Micron Tech. v. United States., 117 F.3d 1386, 1394 (Fed. Cir 1997); Torrington Co. v. United States, 68 F.3d 1347, 1351 (Fed. Cir. 1961). In its Remand Determination, Commerce properly examined whether NTN's sales were "outside the ordinary course of trade" by analyzing the frequency of high profit sales, quantity of high profit sales relative to non-high profit sales, and whether certain types of sales were in the "ordinary course of trade." Remand Determination at 6-14. It also examined whether the high profit sales were sold in abnormally low quantities. Id. As a result of its analysis, Commerce concluded that the only factor truly distinguishing NTN's alleged high profit sales from other sales is the fact that there was a higher profit in such sales, which the Department has consistently found to be an insufficient basis to demonstrate that sales were made outside the ordinary course of trade. Id. at 11. Only after conducting a reasonable analysis did Commerce conclude that NTN's sales are in

10

the ordinary course of trade.  Accordingly, it denied NTN's claim that its high profit sales were "outside the ordinary course of trade."

That a business is able to charge higher prices for smaller volumes of sales does not, on its face, make the sales extraordinary; indeed, it is not an uncommon practice for businesses to provide a volume discount.  NTN's situation here is merely the semantical equivalent.  The court finds that the Remand Determination concluding that NTN's sales were not outside the ordinary course of trade is supported by substantial evidence and is in accordance with law.

## V
## CONCLUSION

For the above stated reasons, Commerce's Remand Determination is affirmed.


_/s/ Evan J. Wallach_____
Evan J. Wallach, Judge


Dated: October 23, 2006
       New York, New York