Harold G. BAUER, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 14929.

United States Court of Appeals
Ninth Circuit.

Jan. 29, 1957.

Rehearing Denied June 3, 1957.

Gerald D. Hile and Alvin J. Ziontz, Seattle, Wash., for appellant.

Charles P. Moriarty, U. S. Atty., William A. Helsell, Asst. U. S. Atty., Seattle, Wash., for appellee.

Before HEALY, ORR and FEE, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

Harold G. Bauer was indicted, charged with possession of gold bullion on February 12, 1954, in violation of 12 U.S.C.A. § 95a and Executive Order No. 6260, as amended, 12 U.S.C.A. § 95a note. He was tried by a jury, convicted and sentenced to imprisonment for 90 days. During the course of the proceedings, he made motions to dismiss the indictment, for a new trial, and to arrest judgment, all of which motions were denied by the trial court. Appeal was taken from the judgment of conviction. There is no question about the facts, and defendant raises none. There was no error at the trial. The conviction was just and must stand if the acts admittedly done constituted a crime.

The sole substantial question is whether there was in force and effect on February 12, 1954, the date of the alleged commission of the offense, any law or regulation under which the judgment of conviction could be sustained. The acts were criminal if Executive Order No. 6260, as amended, was still in effect on that day.

This Executive Order was promulgated on August 28, 1933, during a period declared by the President to be a national emergency. Title 12 U.S.C.A. § 95a was an Act passed during the first World War.[1] It did not strictly in its terms authorize the issuance of this regulation during a national emergency not created by war. However, by the amendment of this statute on March 9, 1933,[2] the statute was amended to declare that "during time of war or during any other period of national emergency declared by the President, the President may" regulate or prohibit under such rules and regulations as he may prescribe hoarding of gold bullion. On March 10, 1933, pursuant to this statute, the President prohibited the removal from the United States of "any gold coin, gold bullion, or gold certificates" except in accordance with regulations.[3] There was during that year a series of other regulations concerning gold. Finally, on August 28, 1933, all the previous orders pertaining to gold were merged in a comprehensive order and superseded thereby. This was Executive Order No. 6260, which reads in part as follows:

"By virtue of the authority vested in me by section 5(b) of the act of

1. On October 6, 1917, 40 Stat. 415.
2. 48 Stat. 1.

3. Executive Order No. 6073, 31 C.F.R. § 120.3.

October 6, 1917, as amended by section 2 of the act of March 9, 1933, entitled 'An act to provide relief in the existing national emergency in banking and for other purposes,' I, Franklin D. Roosevelt, President of the United States of America, do declare that a period of national emergency exists, and by virtue of said authority and of all other authority vested in me, do hereby prescribe the following provisions for the investigation and regulation of the hoarding, earmarking, and export of gold coin, gold bullion, and gold certificates by any person within the United States or any place subject to the jurisdiction thereof. * * * *"

codified at 12 U.S.C.A. § 95a note.

On January 30, 1934, an Act was passed which is known as the Gold Reserve Act of 1934.[4] The Act is codified in 31 U.S.C.A. §§ 440–446, and provides in substance in § 442 that the Secretary of the Treasury shall, by regulation issued under this section, prescribe the conditions under which gold may be acquired and held, transported, melted, or treated, imported, exported or earmarked. Section 443 provides in substance that any gold acquired or held in violation of certain enumerated statutes or any regulations issued by the Secretary of the Treasury shall be forfeited to the United States, and in addition any person failing to comply with the enumerated statutes or any regulation thereunder shall be subject to a penalty equal to twice the value of the gold so seized or involved. Another section of this Act is now codified at 12 U.S.C.A. § 213,[5] which provides congressional approval, ratification and confirmation of all actions, regulations and orders theretofore taken by the President or the Secretary of the Treasury in this regard. The Act of March 9, 1933, likewise contained a ratification clause.[6]

At the outbreak of World War II, Congress again granted the President emergency powers by the First War Powers Act of December 18, 1941, which in general re-enacted the Trading with the Enemy Act of 1917, 50 U.S.C.A.Appendix, § 616 et seq. The First War Powers Act contained a ratification provision similar to those included in the Gold Reserve Act and the Act of March 9, 1933. Title 50 U.S.C.A.Appendix, § 617.[7] This provided congressional ratification of actions theretofore taken by the President or the Secretary of the Treasury under the Trading with the Enemy Act of 1917. The present contention of appellant is that there is no criminal statute or regulation in force which penalizes the possession of gold bullion. This is based upon the argument that the economic emergency which resulted in the adoption of Executive Order No. 6260, under the authority of 12 U.S.C.A. § 95a, no longer exists. It is suggested that there is no national economic emergency at the present time, and, second, not only is there no war emergency, but that, by joint resolution and by presidential proclamation, the war emergencies have ceased to exist. We find that the policy of preventing the retention and possession of gold bullion is a part of the national policy of the United States. The Gold Reserve Act, however, by which this policy is established, imposes no penalties except that the gold acquired or held in violation shall be forfeited and the person failing to comply shall be subject to a penalty equal to twice the value of the gold so seized or involved.[8] Apparently this is the full limit of the penalties which can be imposed under existing statutory law.

It is argued that the government had only to establish the violation of the terms of the regulation and conviction must follow. This argument assumes the regulation became a part of the criminal statutory law when the act of

4. 48 Stat. 337.
5. 48 Stat. 343.
6. 48 Stat. 1.
7. 55 Stat. 840.
8. 31 U.S.C.A. § 443.

the President during the emergency was ratified. This Court does not take that view inasmuch as Congress deemed it necessary to enact a statute setting out the national policy as to gold and include civil forfeiture but not criminal penalties therein. The argument of the brief of the government concedes by implication that an affirmative defense might be made here if it could be shown that all emergencies under which these regulations had validity had ceased to exist, referring to Chastleton Corporation v. Sinclair, 264 U.S. 543, 44 S.Ct. 405, 68 L.Ed. 841. It is then said by the government that this Court can not take judicial knowledge that the facts creating the several emergencies during which this regulation was created and during which it was enforced as an adjunct to legislation valid only in such contingencies have ceased to exist.

██ It seems vital as a matter of national policy that emergency regulations and almost dictatorial powers granted or conceded in the turmoil of war, cold war, economic revolution and the struggle to preserve a balanced democratic way of life, should be discarded upon return to normal conditions, lest we grow used to them as the fittings of ordinary existence. Executive regulations drafted and confirmed for an emergency should expire with the emergency. There will be time enough to revivify these if another emergency require and Congress be willing. Of course, if it seems essential to continue the subject matter of these criminal regulations now, Congress can so declare. But the power lies in Congress.

██ However, this Court should not declare the end of any emergency as matter of law. Nor, except under most exceptional circumstances, should judicial notice be taken by us of conditions from which we might be inclined to conclude an emergency has ended.

The Supreme Court of the United States, in situations at least as clear as those in the present case, remanded a civil matter for retrial in order that the defenses that the emergencies which gave birth to the regulation might be considered.[9] There, as here, the court was urged to take judicial notice of the fact that such emergency conditions were no longer in existence, but, while sustaining the power of the court to find these conditions, nevertheless that tribunal ordered a remand. This seems the wiser course. Here this Court has no jurisdiction or facilities for taking evidence, if that should be required.

In no case which has been called to the attention of this Court has there been any contention made that the emergencies during which this regulation was adopted or enforced by reason of revivified legislation had passed away.[10]

██ It is objected that no evidence of the expiration of the emergency was offered to the trial court, and the record does not indicate that any formal offer was made. However, the indications are that the presentation as though the question were one of law was made. In any event, opportunity should be given to present the matter in the District Court. The judgment of conviction will not now be set aside. The cause will be remanded to the trial court with directions to consider the matters here presented, with power to vacate the judgment, grant a new trial and take evidence or other action in the light of this opinion.

Remanded.

9. Chastleton Corporation v. Sinclair, 264 U.S. 543, 44 S.Ct. 405.

10. Farber v. United States, 9 Cir., 114 F.2d 5, certiorari denied, 311 U.S. 706, 61 S.Ct. 173, 85 L.Ed. 458; Ruffino v. United States, 9 Cir., 114 F.2d 696; United States v. Levy, 2 Cir., 137 F.2d 778; United States v. Chabot, 2 Cir., 193 F.2d 287; United States v. Catamore, D.C., 124 F.Supp. 846.