**Robert Sheldon PIKE and Ryk Henry Brouwer, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 19166.**

United States Court of Appeals Ninth Circuit.

Jan. 14, 1965.

Wm. Bryan Osborne, Los Angeles, Cal., for appellants.

Francis C. Whelan, U. S. Atty., Richard A. Murphy, Asst. U. S. Atty., Chief, Criminal Section, and Kevin O'Connell, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES, HAMLEY, and BROWNING, Circuit Judges.

BROWNING, Circuit Judge.

Appellants were convicted under 12 U. S.C.A. § 95a(3) of willfully violating Executive Order No. 6260, 12 U.S.C.A. § 95a Note.

Subsection (1) of 12 U.S.C.A. § 95a authorizes the President to regulate transactions in gold "[d]uring the time of war or during any other period of national emergency declared by the President." Subsection (3) makes willful violation of provisions of section 95a "or

of any \* \* \* regulation issued thereunder" a crime. Executive Order No. 6260, issued by President Roosevelt October 28, 1933, declared the existence of a national banking emergency and, among other things, prohibited the acquisition or possession of gold without a license.

On December 16, 1950, President Truman proclaimed the existence of a national emergency arising out of the menace of communist aggression. Proclamation No. 2914, 64 Stat. A454 (1950). On November 29, 1960, President Eisenhower declared the continued existence of this emergency, and specifically confirmed Executive Order No. 6260 and the regulations issued thereunder. Exec. Order No. 10896, 25 Fed.Reg. 12281 (1960). Similar action was again taken by President Eisenhower on January 14, 1961 [Exec. Order No. 10905, 26 Fed.Reg. 321 (1961)], and by President Kennedy on July 20, 1962. Exec. Order No. 11037, 27 Fed.Reg. 6967 (1962).

Appellants contend that subsection (1) of section 95a conferred regulatory authority upon the President only during the banking emergency of 1933. Since the Government concedes that crisis has long since ended, if appellants' construction of section 95a(1) were correct Executive Order No. 6260 would no longer be effective (despite the subsequent declarations of Presidents Truman, Eisenhower, and Kennedy based upon the emergency arising from communist aggression), and appellants could not be punished for violating its terms. We cannot accept appellants' narrow construction of the grant of executive authority in section 95a(1) for a number of reasons.

1. It is contrary to the clear language of subsection (1), which empowers the President to act during time of war, or "any other period of national emergency declared by the President."

2. Congress re-enacted these words in 1940 and again in 1941 when we can at least say that it was highly unlikely that the intended reference could have been to a continuation of the banking crisis of 1933. Joint Resolution of May 7, 1940, 54 Stat. 179 (1940); First War Powers Act, 1941, 55 Stat. 838 (1941).

3. Presidents Truman, Eisenhower, and Kennedy, in issuing the proclamation and executive orders noted above, construed the language of section 95a(1) as conferring regulatory authority in periods of peacetime emergency other than the 1933 banking crisis. So too did President Roosevelt in issuing Executive Order No. 8389, 5 Fed.Reg. 1400 (1940), for the emergency in which President Roosevelt acted was not the banking crisis of 1933, but rather a prewar emergency relating to neutrality and defense. See Proclamation No. 2352, 54 Stat. 2643 (1939). And Congress, though presumably aware of the presidential interpretation reflected in these officially published orders, evidenced no disagreement with it, thus affording "at least some evidence of Congressional approval." Laycock v. Kenney, 270 F.2d 580, 589 (9th Cir. 1959). See also Cammarano v. United States, 358 U.S. 498, 511, 79 S.Ct. 524, 3 L.Ed.2d 462 (1959).[1]

4. The adoption of the Joint Resolution of May 7, 1940, 54 Stat. 179 (1940), approving Executive Order No. 8389, 5 Fed.Reg. 1400 (1940), was a specific ratification of President Roosevelt's exercise of section 95a(1) power in an emergency other than war or the 1933 banking crisis. The legislative history of the Joint Resolution reflects a congressional understanding that section 95a(1) authorizes executive action in any peacetime emergency proclaimed by the President. See, e. g., S.Rep. No. 1496, 76th Cong., 3d Sess. (1940); 86 Cong.Rec. 5006, 5172 (1940) (remarks of Senator Wagner); 86 Cong.Rec. 5182 (1940) (rejection of

---

1. See also Staff of House Comm. on the Judiciary, 85th Cong., 2d Sess., Provisions of Federal Law in Effect in Time of Nat'l Emergency (Comm. Print 1958) (revised Jan. 25, 1962 (87th Cong., 2d Sess.)) (listing § 95a among those laws "which by their terms are clearly applicable to a national emergency," and hence were effective on the dates of the respective reports).

amendment to terminate the Joint Resolution on May 1, 1941).[2]

5. The context in which section 95a appeared in the First War Powers Act, 1941, 55 Stat. 838 (1941), indicates that the use of general language in subsection (1) of section 95a was deliberate. The subsection (1) grant of presidential authority to regulate gold during war or "any period of national emergency" appeared in that Act as section 301 of Title III. Section 303 of the same title granted the President power to censor communications, but only "during the present war." Similarly, section 401 of Title IV limited the authority conferred by Titles I and II (but *not* Title III) to "the continuance of the present war and for six months after the termination of the war."

Appellants point to two circumstances in support of their thesis that Congress intended the "during any other period of national emergency" language of section 95a(1) to mean "during the banking crisis of 1933 * * *." First, the title to the Act of March 9, 1933, 48 Stat. 1 (1933), which added the quoted words to section 95a(1), reads: "An Act to provide relief in the existing national emergency in banking, and for other purposes." Second, the legislative discussion of the measure was concerned largely with the imperative need for action posed by the then existing banking crisis.

A desire to provide a means for dealing with future emergencies, as well as the 1933 crisis, may reasonably be included among the "other purposes" referred to in the statute's title. If the title cannot be so construed, we hold that the present case is an appropriate one for application of "the wise rule that the title of a statute * * * cannot limit the plain meaning of the text." Brotherhood of R.R. Trainmen v. Baltimore & O. R.R.

Co., 331 U.S. 519, 528–529, 67 S.Ct. 1387, 1392, 91 L.Ed. 1646 (1947).

The fact that the brief legislative discussion dealt largely with the banking crisis which provided the immediate occasion for legislative action is little indication that Congress intended to similarly confine the availability of the statutory remedy. There is no direct statement that Congress intended such a limitation, and there are some intimations to the contrary—for example, Senator Gore's suggestion that the effectiveness of the bill should be limited to that session of Congress so that its provisions might be given the mature consideration appropriate to permanent legislation (77 Cong. Rec. 62 (1933)); and Congressman Steagall's statement that the provision simply conferred upon the President the same regulatory power over gold as the President already had in time of war under the Act of October 6, 1917, "regardless of whether or not the country is involved in war." 77 Cong.Rec. 79 (1933).

Since we conclude that the power conferred upon the President by section 95a(1) was not confined to the 1933 banking crisis, but extends to any national emergency proclaimed by the President, the contrary holding in United States v. Briddle, 212 F.Supp. 584 (S.D.Cal.1962), must be disapproved.

Appellants concede that, as a factual matter, the emergency declared by Proclamation No. 2914 and reaffirmed by Executive Orders Nos. 10896, 10905, and 11037, still exists. We therefore do not reach appellee's argument that the existence of a national emergency declared by the President is a political question not reviewable by the courts, and that Bauer v. United States, 244 F.2d 794 (9th Cir. 1957), was wrongly decided.

Affirmed.

2. In Propper v. Clark, 337 U.S. 472, 476–486, 69 S.Ct. 1333, 93 L.Ed. 1480 (1949), the Supreme Court sustained Exec. Order No. 8785, 6 Fed.Reg. 2897 (1941), as an exercise of § 95a(1) authority in an emergency other than war or the 1933 banking crisis, remarking in the course of its opinion that "[t]he power in peace and in war must be given generous scope to accomplish its purpose." 337 U.S. at 481, 69 S.Ct. at 1339.