BERZON, Circuit Judge,
dissenting:
I respectfully dissent. I decidedly disagree with the majority’s analysis of the fee award’s compliance with 28 U.S.C. § 1712,[1] the coupon settlement provision of the Class Action Fairness Act of 2005 (“CAFA”), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.).
The majority interprets CAFA as requiring that any attorney’s fees awarded for work done toward a coupon settlement be calculated as a percentage of the value of coupons redeemed. That interpretation of § 1712 would allow lodestar fees for work resulting in injunctive relief, but not for work resulting in coupons. As to the latter, the majority insists that the district court must award fees as a percentage of the coupons actually redeemed, rather than calculating fees on the basis of hourly rates for time reasonably expended, under a lodestar approach. See Lane v. Facebook, Inc., 696 F.3d 811, 818 (9th Cir.2012). That is not what the statute says.
On my reading of the statute, CAFA allows the use of a lodestar to calculate attorney’s fees on the basis of hours reasonably expended on the class action as a whole, rather than as a percentage of the value of the class recovery. That permission applies whether the relief obtained for the class involves, in whole or in part, coupons, or whether it does not. The limit CAFA imposes with regard to cases in which there is a coupon recovery is a limit on.the district court’s method of calculating percentage-of-recovery fees, should it choose that approach. So viewed, § 1712(a) regulates how a percentage-of-recovery fee should be calculated, if that method is used to award attorney’s fees for a coupon settlement; it does not dictate whether a percentage-of-recovery method must be used. Subsections 1712(b) and (c), in turn, provide that a *1188 lodestar method may be used either as an alternative to, or in combination with, a percentage-of-recovery calculation.
I
To begin, it is helpful to review the process the district court used to determine the fee award in this case, as that account helps to illuminate the impractieal-ities of the majority’s CAFA interpretation. The starting point for the court’s analysis was the plaintiffs’ asserted lodestar figure of $7,109,247.09, representing more than 17,000 hours of time “spent on litigation.” Of that total, the plaintiffs requested thirty-two percent, or $2.3 million plus $600,000 in costs, recognizing that the settlement represented at best a very partial vindication of the class claims. See Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The plaintiffs in their submission did not distinguish between hours worked toward the coupon portion of the settlement and hours worked toward the injunctive relief.[2]
Nor could they have. The record indicates that the bulk of the approximately 17,000 hours worked were spent on the merits of the lawsuit. The relief agreed upon was determined in the course of negotiating the settlement, but was not the subject of the discovery disputes, motions, briefs, and arguments that constituted the underlying litigation.[3]
Just as the plaintiffs did not differentiate fees according to the relief obtained, so, too, the district court considered the reasonableness of the attorney’s fees in light of the benefit conferred on the class by both the e-credits and the injunctive relief. The court found the actual cash value of the e-credits to be “significantly less than [the] $1.5 million” face value of the credits approved as of the date of the order. After acknowledging that “the discount in the cash value of the e-credits is *1189 mitigated by [the] value of the injunctive relief achieved by the settlement,” but finding that “no precise value can be placed on the settlement in light of the many uncertainties involved,” the court concluded that “the ultimate value of the settlement to the class is roughly $1.5 million.”[4] To that ballpark estimate of the total value of the coupon and equitable relief, combined, the court compared the plaintiffs’ requested lodestar figure, adjusting the fees downward to $1.5 million plus costs to ensure the fee award reflected the class members’ limited recovery.
Precisely because the value of the award obtained by the class members here — e-credits and injunctive relief — is difficult to quantify, it made sense for the court to calculate the fee amount as a function of the hours counsel worked on the case, rather than a percentage of the class recovery. See Staton v. Boeing Co., 327 F.3d 938, 974 (9th Cir.2003). As in Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir.1998), the district court used its approximate valuation of the coupon and in-junctive relief “only as a cross-check of the lodestar amount, rejecting] the idea of a straight percentage recovery because of its uncertainty as to the valuation of the settlement.” Staton, 327 F.3d at 973 (alteration in original) (quoting Hanlon, 150 F.3d at 1029) (internal quotation marks omitted).
This approach — CAFA aside for the moment — was entirely appropriate. There are no statutory fees at issue here, as there are in some civil rights class actions. So the attorney’s payment had to come from a constructive or “putative” common fund. Cf. id. at 966 (referring to the hypothetical “fund” constructed by.adding together the amount defendants agreed to pay in damages, attorney’s fees, and costs, and a gross amount of money ascribed to the injunctive relief, as a “putative fund”). Our uniform case law, both before and after CAFA, affords district courts discretion to calculate attorney’s fees in common fund cases either on a percentage-of-recovery basis, according to which the court sets fees as a percentage of the overall fund, or on a lodestar basis.[5] See In re Bluetooth *1190 Headset Prods. Liab. Litig., 654 F.3d 935, 942 (9th Cir.2011) (recognizing that courts have discretion to choose either method as a primary basis for calculation, provided they exercise their discretion “so as to achieve a reasonable result”); In re Mercury Interactive Corp. Secs. Litig., 618 F.3d 988, 992 (9th Cir.2010) (citing Powers v. Eichen, 229 F.3d 1249, 1256 (9th Cir.2000)); Staton, 327 F.3d at 967-68; Hanlon, 150 F.3d at 1029; In re Wash. Pub. Power Supply Sys. Secs. Litig., 19 F.3d 1291, 1295-96 (9th Cir.1994).
Although a lodestar figure is “presumptively reasonable,” Cunningham v. Cnty. of L.A., 879 F.2d 481, 488 (9th Cir.1989), district courts have an independent obligation under Federal Rule of Civil Procedure 23(h) to ensure the reasonableness of fees. See Hensley, 461 U.S. at 440, 103 S.Ct. 1933; In re Bluetooth, 654 F.3d at 941 (citing Staton, 327 F.3d at 963-64). To meet this obligation, our case law specifies, the fairness of the lodestar amount should be gauged against the overall class recovery, see In re Bluetooth, 654 F.3d at 942, adjusting the lodestar fees upward or downward as necessary to ensure their reasonableness, see Hanlon, 150 F.3d at 1029; see also Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir.1975) (enumerating factors that bear on whether a court should deviate from the lodestar figure). In doing so, the district court must weigh the requested lodestar figure against a variety of factors, foremost among them the results obtained for the class, monetary and non-monetary alike. See Hensley, 461 U.S. at 434-36, 103 S.Ct. 1933; McCown v. City of Fontana, 565 F.3d 1097, 1102 (9th Cir.2009).
In settled cases involving constructive common funds, we have encouraged district courts to review the reasonableness of lodestar fees by cross-checking the lodestar calculations against a percentage fee, thereby “guard[ing] against an unreasonable result” and “assurfing] that counsel’s fee does not dwarf class recovery.” In re Bluetooth, 654 F.3d at 944-45 (citations and internal quotation marks omitted). “If the lodestar amount overcompensates the attorneys according to the 25% benchmark standard, then a second look to evaluate the reasonableness of the hours worked and rates claimed is appropriate.” In re Coordinated Pretrial Proceedings in Petrol. Prods. Antitrust Litig., 109 F.3d 602, 607 (9th Cir.1997).
Notably, our cases do not suggest that the fee award must be equally justifiable under both the lodestar and the percentage methods, or that the percentage method, when used as a cross-check, must be precise. For example, in Torrisi v. Tucson Electric Power Company, 8 F.3d 1370, 1376-77 (9th Cir.1993), we upheld as reasonable a percentage fee award of nearly $8 million, although the lodestar amount came to only $3 million. An equal justification requirement would defeat the purpose of-affording district courts the choice to employ one method when the other is impracticable, such as when the value of class relief is difficult to quantify.
Here, the district court did the comparison and took the requisite second look: The court explicitly calculated “a reasonable lodestar amount”; compared “the settlement’s attorney’s fee award and the benefit to the class or degree of success in the litigation”; and adjusted the lodestar amount accordingly. See In re Bluetooth, 654 F.3d at 943. In the end, the district court reduced the fee award considerably below the requested amount, 32% of the lodestar figure, even though there was “no *1191 reason at all to doubt that counsel put in the hours they claim.” By doing so, the district court here conscientiously did “assure itself — and us — that the amount awarded [to counsel] was not unreasonably excessive in light of the results achieved.”[6] In contrast, the district court in Bluetooth simply accepted the fee amount requested by the plaintiffs and not contested by the defendants.
According to the majority, the district court’s approach, even if fully compliant with the methodology for determining fees for settled class action cases laid out in our precedent, was all wrong under § 1712 of CAFA. That statute, the majority maintains, mandates that the district court: (1) could not determine the fee award at all until after the e-credits were redeemed; (2) was required to award a large part of the fees by the percentage method rather than as lodestar fees; and (3) was required somehow to separate out the fees traceable to the e-credit relief from the fees traceable to the injunctive relief, even though nearly all of the time spent by the lawyers dealt with liability issues and not with relief.
II
I turn now to whether, as the majority supposes, the CAFA provisions concerning coupon settlements outlaw the district court’s approach to determining fees, and substitute instead the majority’s rigid approach, just outlined. They do not. The CAFA provisions on which the majority relies permit lodestar-based fees for coupon settlements, and they do not withdraw that permission when, as our precedents for fee settlements require, the district court considers an estimate of the total benefit conferred in determining the amount of a reasonable lodestar-based fee.
The majority insists that § 1712(a) is perfectly clear, and can only mean that any attorney’s fees for litigation that results in a settlement including coupons must be calculated, at least in part, as a percentage of the coupon recovery, rather than as traditional lodestar fees. Not so. When the pertinent subsections of § 1712 are interpreted collectively and in context, and read together with the statute’s purpose and legislative history, it becomes clear that the provisions permit two methods — not one — of calculating attorney’s fees in cases involving coupon settlements: the percentage-of-recovery method, referred to in the statute as “contingent fees,” see § 1712(a) (“Contingent fees in coupon settlements”), and the lodestar, payment-for-reasonable-time-worked method, discussed in § 1712(b) (“Other at *1192 torney’s fee awards in coupon settlements”). The dichotomy addressed in § 1712 as a whole is between these two approaches to awarding attorney’s fees in coupon settlements — not, as the majority suggests, between two types of class relief: coupons and injunctions. Section 1712 provides for the use of either fee calculation method, as alternatives or in combination, regulating how each method should be applied, not which method a court should use.
A
Section 1712 is titled “Coupon settlements,” indicating that the section applies generally to such settlements, whether coupons represent the totality of a class award or a component thereof.[7] As relevant here, subsections (a) through (c) discuss attorney’s fees in such actions.[8] The majority asserts that subsection (a) of § 1712 “governs cases where the class obtains only coupon relief,” while section (b) addresses cases in which the settlement includes mixed forms of relief. Maj. Op. at 1183. But nothing in the text of either subsection (a) or (b) turns its application on the composition of the class relief. Rather, subsections (a) through (c) all address remuneration of attorneys in cases involving coupon relief; what distinguishes them is the methodologies of fee calculation that they describe, not the type of relief to which they apply.
I begin, as does the majority, with § 1712(a), entitled “Contingent fees in coupon settlements,” which states: “If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney’s fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed.” § 1712(a). The language of the subsection, the term “contingent fee” in the heading, and the legislative history of CAFA all comfortably support a reading of “attributable to the award of the coupons” as denoting “derived from” or “calculated as a percentage of’ the coupons’ value. And, as I explain in Parts B and C, infra, only with that *1193 understanding can § 1712(a) coexist sensibly with the other pertinent provisions, § 1712(b) and (c).
The phrase “contingent fees” is a term of art in the attorney’s fee realm[9]: “Contingency fee arrangements ... are arrangements where an attorney’s fee is based on a percentage of the amount recovered by his client.” Chalmers v. City of L.A., 796 F.2d 1205, 1212 n. 4 (9th Cir.1986), as amended on denial of reh’g, 808 F.2d 1373 (9th Cir.1987). Similarly, Black’s Law Dictionary defines “contingent fee” as: “A fee charged for a lawyer’s services only if the lawsuit is successful or is favorably settled out of court. Contingent fees are usu[ally] calculated as a percentage of the client’s net recovery (such as 25% of the recovery if the case is settled, and 33% if the case is won at trial).” Black’s Law Dictionary 362 (9th ed. 2009). In contrast to lodestar fees, then, contingent fees hinge on the outcome for the clients, rather than the input of the attorneys, and ordinarily are calculated as a percentage of the clients’ recovery.[10] In short, as used in the heading for § 1712(a), the term “contingent fees” is best understood as a synonym for “percentage-of-recovery fees.”
Consistent with that understanding, § 1712(a) refers to “the portion of any attorney’s fee award attributable to the award of the coupons ...” (emphasis added). The majority’s discussion of § 1712(a) downplays the word “portion,” (and, as we shall see, the majority entirely elides the term “portion” in its discussion of subsections (b) and (c)). Maj. Op. at 1181-83. But “[cjourts must aspire to give meaning to every word of a legislative enactment.” Miller v. United States, 363 F.3d 999, 1008 (9th Cir.2004). And the word “portion” is an aid in understanding the meaning of the entire “contingent fee” provision in CAFA.
A “portion” means a “share” or “allotted part,” a fraction. See Black’s Law Dictionary 1280 (9th ed. 2009). Accordingly, the phrase “a portion of an attorney’s fee award” only makes sense if the word “award” refers to a divisible item or amount — here, the monetary sum awarded to counsel. If “award” in this context referred only to a “final judgment or decision,” Black’s Law Dictionary 157 (9th ed. 2009), rather than the actual value of the fees assessed, it would make little sense to speak of a “portion” of the award.
The word “award” appears again in the same section, in reference to the “award of the coupons.” § 1712(a). “[I]t is a ‘normal rule of statutory construction’ that ‘identical words used in different parts of the same act are intended to have the same meaning.’ ” Taniguchi v. Kan Pac. Saipan, *1194 Ltd., -U.S.-, 132 S.Ct. 1997, 2004-05, 182 L.Ed.2d 903 (2012) (quoting Gustafson v. Alloyd Co., Inc., 513 U.S. 561, 570, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995)); see also Sun v. Ashcroft, 370 F.3d 932, 939 (9th Cir.2004). Thus, just as the “attorney’s fee award” refers to the monetary value of the fees assessed, the “award of the coupons” refers to the monetary value of the coupons. The words “attributable to,” in the phrase “the portion of any attorney’s fee award ... attributable to the award of the coupons,” therefore describe the relationship between these values — that of a portion of the attorney’s fees and that of the coupons. In other words, the term “attributable” supplies the connection between two measures of value, indicating that the section is concerned with those situations in which the value of fees, in whole or in part, is derived from the value of the coupons provided.
It follows, then, that the mandatory language in § 1712(a), “shall be based on the value to class members of the coupons that are redeemed,” applies only to that portion of any attorney’s fee award that is calculated as a percentage of the coupon-based relief. In some cases, no portion of the attorney’s fees will be “attributable to” the coupon award in the sense of calculated as a percentage of the coupon value, and therefore § 1712(a) will not apply.
The majority assumes, contrary to this analysis, that “the portion of any attorney’s fee award to class counsel that is attributable to the award of the coupons” means any fee for obtaining coupon relief. But the text of § 1712(a) does not refer to fees “for obtaining coupon relief” (emphases added). See Maj. Op. at 1184. Instead, as noted, it refers to circumstances where the fee is “attributable” to the coupon “award,” where, in context, “award” connotes a measure of value. Moreover, as will shortly appear, the majority’s construction would deprive § 1712(b) and (c) of their role as alternative approaches to the calculation of attorney’s fees. Statutory interpretation cannot be sensibly accomplished by isolating closely interrelated subsections from each other. Instead, each such subsection may throw light on the others — and, as I shall soon discuss, subsections (b) and (c) expressly contemplate lodestar-based fees where coupons are awarded.
Moreover, the legislative history cited by the majority fully confirms my understanding of § 1712(a). See Maj. Op. at 1185. The Senate Report from the Committee on the Judiciary provides that attorney’s fees should be “based on the demonstrated value of coupons actually redeemed” when “it is proposed that an attorney fee award be based solely on the purported value of the coupons.” S. Rep. No. 109-14, at 30 (emphases added). This language confirms that § 1712(a) was concerned with fees calculated based on the value of coupons — that is, traditional or percentage “contingent” fees — and not with all fees in class actions that result in coupon settlements, even if calculated on a lodestar basis. This passage from the legislative history also confirms that class counsel retain, under § 1712, the option to decide whether to seek attorney’s fees based on the value of the coupon relief or not. If the majority were correct, and some portion of the fee award would always be “attributable to” the coupon award in settlements involving coupon relief, then counsel would have no such flexibility.
In short, § 1712(a) requires only that if fees are calculated as a percentage of the value of coupons awarded, that value must comprise only redeemed coupons. The subsection does not mandate that whenever coupons are awarded, the percentage method — or “contingent fee” method— must be used.
*1195 B
Subsection 1712(b) strongly reinforces— indeed, compels — this understanding of § 1712(a), by directly and comprehensively addressing the use of the lodestar technique for attorney’s fee awards in coupon settlements. The title of § 1712(b), “Other attorney’s fee awards in coupon settlements” (emphasis added), refers without limitation to fees “in coupon settlements” (emphasis added), not to fees for equitable relief only, indicating that § 1712(b) contemplates an alternative method of calculating attorney’s fees “in coupon settlements” generally.
Subsection (b) goes on to specify that if “a portion of the recovery of the coupons is not used to determine the attorney’s fee to be paid to class counsel,” then “any attorney’s fee award shall be based upon the amount of time class counsel reasonably expended working on the action.” § 1712(b)(1) (emphases added). Again, “a portion” means a percentage, which is, of course, just another way of expressing a fraction. So, to determine fees using a “portion of the recovery of the coupons” means to calculate fees as a percentage of the value of the coupons— in other words, to calculate a “contingent fee,” in attorney’s fee lingo. Subsection (b)(1) thus applies whenever a proposed settlement includes recovery of coupons, whether exclusively or in part, but does not calculate fees as a percentage of the coupons provided by the settlement; § 1712(b)(1) specifies that in that instance, a lodestar fee should be awarded. In other words, if the percentage-of-recovery method described in § 1712(a) is not used, then the lodestar method should be used instead. And that directive applies to “any” attorney’s fee award “in coupon settlements,” not only to fees tied to equitable relief.
The majority insists on a contrary interpretation — that the lodestar method set forth in § 1712(b) is applicable only in situations in which a coupon settlement also provides for non-coupon relief, pertains only to that non-coupon relief, and is mandatory for any fees for obtaining non-coupon relief. Maj. Op. at 1183. But nothing in § 1712(b)(1) limits the application of the lodestar method to fees for hours worked on obtaining equitable or other non-coupon relief. Rather, the heading of subsection (b)(1), “[i]n general,” and the reference to “any attorney’s fee” (emphasis added), both indicate that it applies whenever the settlement “provides for a recovery of coupons” and the percentage-of-recovery method described in § 1712(a) is not used.
The majority comes to a contrary conclusion only by repeatedly truncating the language of § 1712(b), as if it applied whenever “recovery of the coupons is not used to determine” the fee (a grammatically incoherent phrase, I note), see Maj. Op. at 1183, as opposed to whenever “a portion of the recovery of the coupons is not used to determine the attorney’s fee,” § 1712(b) (emphasis added). But, once again, the “portion” term is essential here, indicating that the distinction is between percentage fees and lodestar fees, not between fees for coupons and fees for equitable relief. Once one places the word “portion” back where it belongs in § 1712(b), the majority’s accusation that my reading of § 1712(b) renders § 1712(a) a nullity, Maj. Op. at 1183, falls flat: Subsection 1712(a), on my reading, covers circumstances in which fees are calculated, in whole or part, as a “portion” — a percentage — of the coupons awarded, while § 1712(b) covers circumstances in which the percentage method is not the one used.
This conclusion is reinforced by the phrase “used to determine” in § 1712(b)(1). That phrase indicates that the circumstances excluded from § 1712(b) *1196 are those in which the percentage method “determine^” the fee, and not simply those in which fees are awarded in whole or part “for obtaining coupon relief.” Maj. Op. at 1184.
Moreover, § 1712(b) does not isolate the type of class relief for which counsel is compensated. Instead, subsection (b)(1) refers to work done “on the action ” (emphasis added), thereby permitting the use of a lodestar method to calculate fees based on time spent on the case as a whole — including time spent obtaining coupon relief. Subsection (b)(2) reinforces this directive, by specifying that a lodestar fee under subsection (b) “shall include an appropriate attorney’s fee, if any, for obtaining equitable relief, including an injunction, if applicable.” §. 1712(b)(2) (emphases added). The use of the word “include,” and the phrases “if any” and “if applicable,” to refer to equitable relief confirm that the lodestar fee provided for in subsection (b)(1) is not limited to equitable relief.
Last, the actual distinction drawn by § .1712(b), rather than the one the majority invents, makes perfect sense in the context of the concerns that motivated § 1712 — namely, the potential for huge fees through a percentage approach, where the percentage was of all coupons that could be redeemed, even though few were. See S. Rep. No. 109-14, at 30.
In sum, from its title to its substantive reach to its operative text, § 1712(b) evidences that lodestar fees are an available method of calculating fees for settlements that include coupon awards, whether or not the settlement also includes equitable relief.[11]
C
Finally, § 1712(c) — titled “Attorney’s fee awards calculated on a mixed basis in coupon settlements” — builds upon § 1712(a) and (b), addressing how the percentage-of-recovery and lodestar methods described in each of those preceding subsections may be used in combination to award fees for a coupon settlement. Nothing in subsection (c) requires that both methods of fee calculation be used when the settlement includes both coupon and non-coupon relief.
As is evident from the subsection’s title, what is mixed in instances covered by § 1712(c) is the method for calculating fees, not the nature of the settlement award (i.e., coupons, equitable or monetary relief). Although the first phrase of subsection (c) refers to mixed types of class relief[12] — settlements involving both coupon and equitable relief — the substantive provisions, subsections (c)(1) and (c)(2), break out the application of the preceding subsections, § 1712(a) and (b), based not on the relief granted but on the fee methodology used. Thus, each subparagraph refers to “that portion of the attorney’s fee ” calculated in a certain manner — either “based upon a portion of the recovery of the coupons” or “not based upon a portion of the recovery of the coupons” (emphasis add *1197 ed). Nothing in the text of either subpara-graph excludes the possibility that, in cases involving both coupon and equitable relief, no portion of the fee award is to be paid in the manner addressed by that paragraph. That is, even when there is a mixed class remedy, it may be the case— as it was here — that the only fees assessed are those calculated in accordance with § 1712(b), as lodestar fees.
The majority yet again goes wrong by ignoring the word “portion,” which appears twice in both § 1712(c)(1) and § 1712(c)(2). In both instances, the first use of the term refers to the “portion” of the fee award, but the second refers to the calculation of fees as “a portion of the recovery of the coupons ” (emphasis added) — that is, contingent or percentage fees. So, once again, the distinction between the application of § 1712(a) and § 1712(b) is drawn on the basis of the methodology used, not the relief obtained. And the legislative history the majority quotes is similar, explaining the distinction as one between “the portion of the award that is a contingent fee based on the value of the coupons” and “the portion not based on the value of the coupons.” S. Rep. No. 109-14, at 31 (emphasis added); see Maj. Op. at 1185. Lodestar fees are based on hours worked and rates charged, not on the value of recovery, and so are not the “contingent fee” to which the history quoted refers.
D
Looked at as a whole, then, § 1712(a), (b), and (c) set forth three approaches to calculating fees in coupon awards: as a percentage of the value of redeemed coupons; as a function of hours reasonably worked on the action; or as a combination of the two approaches. In a settlement involving coupons, if attorneys are, in whole or in part, awarded contingent fees — that is, fees equal to a percentage of the purported monetary value of the class relief — CAFA requires federal courts to assess those fees based on the value of the coupons actually redeemed. § 1712(a). But where a district court opts not to award fees on a percentage basis, CAFA requires the fees to' be based on hours reasonably expended working on the action, using a lodestar approach. § 1712(b)(l)-(2).
My understanding of the statute, but not the majority’s, comports with long-established principles underlying attorney’s fees in class actions generally. “[A] mechanical or formulaic application of either [the lodestar or the percentage-of-the-fund] method, where it yields an unreasonable result, can be an abuse of discretion.” Fischel v. Equitable Life Assur. Soc’y of the U.S., 307 F.3d 997, 1007 (9th Cir.2002) (quoting In re Coordinated Pretrial, 109 F.3d at 607) (internal quotation marks omitted). The majority supposes that, in CAFA, Congress broadly mandated such a mechanical, potentially unreasonable approach where a settlement includes coupons. Under the majority’s interpretation, for example, if a coupon settlement were reached after plaintiffs’ attorneys did very little work, the attorneys would nonetheless be statutorily entitled to receive a fee equivalent to up to the benchmark twenty-five percent of the value of the redeemed coupons, instead of a lodestar fee based on hours worked, which could amount to much less. For all the reasons already surveyed, Congress did not intend such unreasonable results, but instead left district courts with the discretion to calculate fees using either approach.
The majority warns that allowing class counsel to obtain lodestar fees for an entire class settlement, including coupon relief, would enable counsel to “walk[ ] away from a case with a windfall, while class members walk away with nothing,” thereby “run[ning] counter to one of the main *1198 purposes of CAFA: discouraging coupon settlements' — particularly those where presumably valuable (but actually worthless) coupons form some part of the basis for an attorneys fees award.” Maj. Op. at 1185— 86. But this scenario ignores the safeguards that exist independent of CAFA to prevent such outcomes. As I have explained, district courts have an obligation to ensure that attorney’s fees are reasonable by cross-checking lodestar-based awards against a variety of factors, including the estimated benefit obtained by the class, just as courts must cross-check percentage-based fees against a lodestar calculation.
Moreover, the problem of excessive attorney’s fees is not limited to coupon settlements in which class members receive “scrip” while attorneys receive cash; the risk is also present in settlements providing a small cash award to each class member. In cases involving such cash relief, attorney’s fees could be greatly disproportionate to the benefit received by class members, whether calculated as a lodestar or a percentage-of-recovery, depending on a variety of factors — including, inter alia, the speed of settlement, the size of the class, and the strength and complexity of the plaintiffs’ claims. Nothing in CAFA addresses fee awards in such cases. Instead, the limited concern addressed in § 1712 of CAFA is the overvaluing of a coupon recovery to boost a percentage-of-fund fee award.
E
Although legislative history has been downplayed in recent years as a useful tool for statutory interpretation, I continue to find it helpful when properly used. Of course, “[e]xtrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature’s understanding of otherwise ambiguous terms.” Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 568, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005). As I have stated elsewhere, see James v. City of Costa Mesa, 700 F.3d 394, 409 n. 2 (9th Cir.2012) (Berzon, J., concurring in part and dissenting in part), self-conscious congressional declarations of interpretive or application precepts are indeed manipulable and may reflect an attempt to enforce principles that would not have been adopted if incorporated into the statute. See Exxon Mobil, 545 U.S. at 568, 125 S.Ct. 2611. But clues discernable from legislative materials, such as the Senate Report on which I here rely, concerning how the legislators considering the bill were speaking about the statute at hand, aid rather than impede statutory interpretation. The manner in which language was used when the bill was under consideration may illuminate apparent impreeisions in the later-enacted statute.
Here, the legislative history of CAFA confirms that courts are not obliged to base attorney’s fees on the value of coupons, but rather retain the choice to use either of the traditional methods, subject to the qualifications set forth in § 1712. I have already quoted some of the relevant language. In addition, the “purpose” section of the Senate Judiciary Committee Report indicates that CAFA’s Consumer Class Action Bill of Rights, codified at 28 U.S.C. §§ 1711-1713, contains provisions
specifying] the methods for calculating attorney’s fees in class settlements in which coupons constitute all or part of the relief afforded to claimants to ensure that such fee awards are consistent with the benefits afforded class members or the amount of real work that the class counsel have performed in connection with the litigation.
S. Rep. No. 109-14, at 5 (emphases added). The Report goes on to describe the flexibility class counsel retains:
*1199 In some eases, the proponents of a class settlement involving coupons may decline to propose that attorney’s fees be based on the value of the coupon-based relief provided by the settlement. Instead, the settlement proponents may propose that counsel fees be based upon the amount of time class counsel reasonably expended working on the action.
Id. at 30 (emphasis added).
So, as described in the Senate Report, § 1712 retained rather than replaced district courts’ discretion to choose between percentage-of-recovery and lodestar fees for coupon settlements. The concern reflected in § 1712(a), in other words, was with how a contingency fee should be calculated, not with whether only contingency fees — that is, percentage-of-recovery fees — should be allowed.
As I have explained, § 1712(a), (b), and (c), especially when read in light of one another rather than in isolation, accomplish exactly what the Committee indicated the statute set out to do. They leave to district judges the flexibility to choose between the two primary fee calculation methodologies that they had available to them before CAFA and continue to have after CAFA in common fund cases involving monetary relief. Section 1712 did not disturb our case law requiring that fees be adjusted to reflect the benefits actually obtained, in part through a cross-check with the other methodology. But § 1712 did restrict the calculation of contingency fees, by requiring that a percentage-of-recovery fee be based on redeemed coupons, not on hypothetically available coupons.
Conclusion
Here, the district court proceeded exactly as required by our class action settlement case law and as permitted by § 1712: It did not award a contingency fee, calculated as a percentage of the purported value of the total class recovery. Instead, it chose to award a lodestar fee, calculated on the basis of hours worked and rates charged, carefully limited by a fair estimate of the amount of the benefit received by the class. There was no violation of § 1712 of CAFA.
As I would hold the fee award consistent with CAFA, § 1712, I respectfully dissent.[13]

. All further references to § 1712 are to 28 U.S.C. § 1712.

. The settlement left the district court full authority to determine a reasonable fee. The defendants promised only not to contest an award of $2,900,000 or less.

. The district court docket sheets for the three consolidated actions indicate that there was fairly extensive motion practice between January 2006 and March 2010, including, inter alia, motions to dismiss, motions for class certification, motions for summary judgment, and motions to compel discovery responses. An April 2008 status report on the discovery motions in the Ciolino action indicates that the plaintiffs had reviewed 179 Hewlett Packard (HP) "i-Care” entries (customer complaints to HP). According to the declaration submitted on behalf of class counsel in support of their motion for attorney’s fees, the investigation into the facts and law relating to the complaints included:
(1) the depositions of approximately a dozen witnesses; (2) the review of hundreds of thousands of pages of documents; (3) more than 100 written discovery requests; (4) the inspection of several of the HP Inkjet printers at issue; (5) consultations with industry personnel;' (6) extensive work with experts including the design and implementation of independent testing; (7) numerous interviews of witnesses and putative members of the classes; (8) the evaluation of information provided by current or former employees of HP (including the HP engineers with primary responsibility for the design of some of the HP inkjet printer models at issue and matters related thereto); and (9) legal research as to the sufficiency of the claims.
In January 2010, the parties to the three actions filed stipulations continuing the adjudication of pending motions to allow for mediation and settlement discussions to proceed. From that point — four years into the litigation — counsel expended time in mediation, working toward a settlement. It thus appears that the vast majority of the fees were incurred prior to the commencement of settlement negotiations. And although some portion of the 17,000 hours represents work done toward negotiating the coupon and injunctive relief, given how settlement negotiations ordinarily proceed, sorting out hours applicable to one kind of relief or the other is likely to be exceedingly difficult.

. Notably, although it was not yet known at the time of settlement how many e-credits would be redeemed, many class members had already taken affirmative steps to obtain e-credits. Unlike the typical coupon settlement in which the defendants automatically send coupons to all eligible class members, in this case, class members were required to apply before the settlement approval for the e-credits, using an online claim form. At the time of the district court’s approval of the fee award, “the settlement administrator had received 122,410 claims for 202,176 printers.” Given the effort involved in obtaining the coupons, it was fair to assume that most of the individuals who had applied for the e-credits would redeem them. The court, therefore, reasonably looked to the number of coupons applied for as of the date of settlement, and used, as a rough cross-check on lodestar-based fees, their collective face value of $1,465,629.00, discounted in light of the additional steps necessary to obtain the credits and the restrictions placed on their use.
In addition, in valuing the relief obtained, the district court could reasonably assume the injunctive relief would be of benefit to some number of class members, because the groups of present and future consumers of HP printer products overlap. As printers are quasi-durable goods, their owners who purchase HP printer supplies and accessories today are also likely to purchase those products in the future, and therefore likely to benefit from improvements in the accuracy of information and instructions disclosed by HP online, in user manuals, and on product packaging.

. As we explained in Staton, where parties seek an attorney's fee award calculated as a percentage of the value of a common fund— whether putative or actual — they may agree on a total fund amount and then “class counsel will apply to the court for an award from the fund, using common fund fee principles,” to ensure sufficient judicial checks on the reasonableness of the fee award. Staton, 327 F.3d at 972. "In those circumstances, the *1190 agreement as a whole does not stand or fall on the amount of fees. Instead, after the court .determines the reasonable amount of attorney's fees, all the remaining value of the fund belongs to the class rather than reverting to the defendant.” Id.

. Anything more than nominal or de minimis relief can justify lodestar fees, especially where the fees awarded are only a small fraction of the lodestar request. See Farrar v. Hobby, 506 U.S. 103, 116-18, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (O'Connor, J., concurring). "The Farrar exception, which would allow the court to dispense with the calculation of a lodestar and simply establish a low fee or no fee at all, is limited to cases in which the civil rights plaintiff ‘prevailed’ but received only nominal damages and achieved only ‘technical’ success.” Morales v. City of San Rafael, 96 F.3d 359, 362-63 (9th Cir.1996), as amended on denial of reh'g, 108 F.3d 981 (9th Cir.1997); accord Mahach-Watkins v. Depee, 593 F.3d 1054, 1059 (9th Cir.2010).
It is true that the e-credits offered by Hewlett Packard are worth somewhat less than their face value, and that the injunctive relief is worth far less than the plaintiffs’ estimate of $ 16 — $41 million. But the settlement achieved here is not a merely "technical” or "de minimis” victory like that of the plaintiffs in Farrar, who were awarded only one dollar out of the $17 million they sought. See Farrar, 506 U.S. at 108, 113 S.Ct. 566. The district court's estimate of the total value of the relief as $1.5 million is supported by the record; the majority does not suggest otherwise.

. Although the title of a statute or section heading cannot limit the plain meaning of the statutory text or create ambiguity where none exists, see Bhd. of R.R. Trainmen v. Baltimore & Ohio R.R., 331 U.S. 519, 528-29, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947); UMG Recordings, Inc. v. Shelter Capital Partners LLC, 718 F.3d 1006, 1022 n. 13, 2013 WL 1092793, at *11 n. 13 (9th Cir. Mar. 14, 2013); Northstar Fin. Advisors, Inc. v. Schwab Invs., 615 F.3d 1106, 1120 (9th Cir.2010); Pike v. United States, 340 F.2d 487, 489 (9th Cir.1965), "statutory titles and section headings are tools available for the resolution of a doubt about the meaning of a statute.” Fla. Dep’t of Revenue v. Piccadilly Cafeterias, Inc., 554 U.S. 33, 47, 128 S.Ct. 2326, 171 L.Ed.2d 203 (2008) (quoting Porter v. Nussle, 534 U.S. 516, 528, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)) (internal quotation marks omitted); see also Almendarez-Torres v. United States, 523 U.S. 224, 234, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998); Frankl v. HTH Corp., 650 F.3d 1334, 1351 (9th Cir.2011). Thus, "[a]lthough statutory titles are not part of the legislation, they may be instructive in putting the statute in context.” Singh v. Gonzales, 499 F.3d 969, 977 (9th Cir.2007).
Here, the section title and all of the subheadings of the CAFA provision codified at 28 U.S.C. § 1712 were included in the original bill. See CAFA, Pub. L. No. 109-2, 119 Stat. 4 (2005). Where that is so, and particularly where a section title or heading is reinforced by legislative history, it can be presumed that it "does not reflect careless, or mistaken, drafting.” See Almendarez-Torres, 523 U.S. at 234, 118 S.Ct. 1219.

. Subsections 1712(d) and (e), not discussed in the majority opinion, provide for, respectively, the court's receipt of expert testimony regarding the actual value to the class members of coupons redeemed and the holding of a hearing to determine whether the settlement is fair, reasonable, and adequate. Although both concern fee calculations, neither is directly relevant here.

. “[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.” INS v. St. Cyr, 533 U.S. 289, 312 n. 35, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (quoting Morissette v. United States, 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952)).

. Commentators have interpreted CAFA's provision on "contingent fees,” § 1712(a), as regulating the use of the percentage method of calculating fees where the class award includes coupons. See, e.g., Report on Contingent Fees in Class Action Litigation, 25 Rev. Litig. 459, 473 (2006) (describing how CAFA changed the application of the “percentage fee method” for coupon settlements in federal court); Charles W. "Rocky” Rhodes, Attorneys’ Fees in Common-Fund Class Actions: A View from the Federal Circuits, 35 The Advoc. (Texas) 56, 60 (2006) (explaining that "CAFA authorizes employing the percentage method” whereby fees are "based on the value of the coupons actually redeemed rather than estimating a redemption rate in percentage cases”).

. There is little case law interpreting § 1712(b), but courts that have addressed the issue recognize that the subsection allows the calculation of fees in a coupon settlement on the basis of hours class counsel worked. See, e.g., True v. Am. Honda Motor Co., 749 F.Supp.2d 1052, 1077 (C.D.Cal.2010) ("[T]he lodestar method of awarding fees is permissible under CAFA....”); Fleury v. Richemont N. Am., Inc., No. C-05-4525 EMC, 2008 WL 4680033, at *5 (N.D.Cal. Oct. 21, 2008) (unpublished); Perez v. Asurion Corp., No. 06-20734-CIV, 2007 WL 2591180, at *1-2 (S.D.Fla. Aug. 8, 2007) (unpublished) (citing S. Rep. No. 109-14, at 31).

. That phrase reads: “If a proposed settlement in a class action provides for an award of coupons to class members and also provides for equitable relief, including injunctive relief — .” § 1712(c).

. Because the majority does not do so, 1 do not address the other challenges the objectors mount to the settlement.