**SEGAL LOCK & HARDWARE CO., Inc., et al. v. FEDERAL TRADE COMMISSION.**

**No. 322.**

Circuit Court of Appeals, Second Circuit.

July 14, 1944.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

Goodman & Friedman, of New York City, and Charles M. Palmer, of Washington, D. C. (Charles M. Palmer, of Washington, D. C., of counsel, Saul W. Goodman, of New York City, on the brief), for petitioners.

W. T. Kelley, Chief Counsel, Joseph J. Smith, Jr., Asst. Chief Counsel, Everett F. Haycraft, and Jno. W. Carter, Jr., Special Attys., all of Washington, D. C., for respondent.

SWAN, Circuit Judge.

The petitioners are Segal Lock & Hardware Company, a New York corporation, its wholly owned subsidiary Norwalk Lock Company, a Connecticut corporation, and Louis Segal, who is the president and treasurer of both corporations. The petitioners are engaged in the manufacture and sale in interstate commerce of locks and lock cylinders. They have marketed their locks under the trade name "Segal Pick-Proof" and have advertised extensively by such slogans as "the only lock cylinder that is impossible to pick," "only your key will unlock it," and similar statements representing that the petitioners' lock affords absolute security against picking and is the only lock which does do so. On September, 1939, the respondent issued a complaint against the petitioners charging that the representations above referred to constitute a violation of section 5(a) of the Federal Trade Commission Act, as amended, 15 U.S.C.A. § 45. Extensive hearings were held before a trial examiner and on June 12, 1942, the Commission made the challenged order which directs the petitioners to desist from using the term "pick-proof" in connection with their locks or otherwise representing that their locks or lock cylinders cannot be picked. The questions presented are (1) whether the Commission's finding that the petitioners'

lock cylinder is not pick proof is supported by substantial evidence; and (2) whether the hearing was so unfairly conducted, as the petitioners claim, that the order cannot stand.

The first question turns upon the meaning of "pick-proof." The petitioners argue that picking a lock means opening it by the use of conventional picks or instruments customarily used by locksmiths and burglars. But the Commission has made a finding that "picking a lock may be defined as the opening of the lock without the use of the original or duplicate keys and without damage to the lock." Not only is there testimony to support this definition but the petitioners' own advertising shows that they used "pick-proof" to mean that the lock could be opened only with its own key, and was "absolutely" pick-proof. The Commission found that although the lock is reasonably secure against customary or conventional methods of picking, it is not in fact pick-proof, and that the petitioners' representations with respect to the invulnerability of their lock against picking are erroneous and misleading. Plainly there is evidence to support the finding that "pick-proof" is misleading under the Commission's definition of the term. Although six expert locksmiths testified on behalf of the petitioners that they had not been able to pick the lock, three others on behalf of the respondent testified that they had picked it on numerous occasions; and two of these witnesses conducted a demonstration before the trial examiner alone, in which they did so. On conflicting evidence the Commission's decision must be accepted as final. 15 U.S.C.A. § 45(c). Benton Announcements v. Federal Trade Commission, 2 Cir., 130 F.2d 254.

We pass now to a consideration of whether the trial was fairly conducted. When counsel for the petitioners sought to cross-examine the respondent's experts as to the methods and instruments they had used in their alleged picking of the lock, the questions were excluded on the ground that the method and tools used by the witnesses were a "trade secret" which they were privileged not to reveal. By an order made on October 12, 1940, the Commission sustained the trial examiner's ruling but directed that the witnesses demonstrate the picking of the lock in the presence of the trial examiner alone, and that he include in the record a statement whether the lock was successfully picked by them. Thereafter such a demonstration was given by the witnesses Rusch and Leurele. Three of the petitioners' lock cylinders were purchased by counsel from hardware dealers and were successively installed in the door of the hearing room. The trial examiner and the two witnesses remained inside the room, all other persons being excluded. Counsel for petitioners and counsel for the respondent remained immediately outside the door until the picking was accomplished. One of the witnesses successfully picked two of the cylinders, the first within thirty minutes and the third within four minutes. The second witness was unsuccessful in his attempt to pick the second cylinder, but the record indicates that possibly this lock was not in perfect condition when purchased.

If "pick-proof" meant that the picking must be done by conventional picks and customary methods, the prevention of cross examination to find out what tools and technique the witnesses had used on the occasions when, according to their direct testimony, they had picked petitioners' locks might perhaps be so serious a limitation of the right of cross examination as to deprive them of a fair hearing, although the authorities recognize a wide discretion in the trial judge to protect against the revelation of trade secrets. See Wigmore, Evidence, 3d Ed., Vol. 8, § 2212; Du Pont de Nemours Powder Co. v. Masland, 244 U.S. 100, 103, 37 S.Ct. 575, 61 L.Ed. 1016. But in view of the Commission's definition of picking a lock the issue was not *how* the lock was picked but whether it could be opened without keys and without damage to the lock. On that issue the petitioners' cross examination was not limited. For the same reason we think that the demonstration before the examiner in camera in order to protect the witnesses' trade secret was not unfair. The petitioners affixed the locks and saw the door opened without damage to the locks and without the use of keys. All they were deprived of was observation of the technique by which it was accomplished.

Order affirmed.