*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-FS-1771

IN RE J.W., APPELLANT.

Appeal from the Superior Court
of the District of Columbia
(DEL-1326-12)

(Hon. Robert R. Rigsby, Trial Judge)

(Submitted September 29, 2014                    Decided October 9, 2014)

*James E. Drew* was on the brief for appellant.

*Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, *Rosalyn Calbert Groce*, Deputy Solicitor General, and *Janice Y. Sheppard*, Assistant Attorney General, were on the brief for appellee District of Columbia.

Before FISHER and BECKWITH, *Associate Judges*, and FARRELL, *Senior Judge*.

FISHER, *Associate Judge*: Following a bench trial, appellant J.W. was found "involved" in possessing the implements of crime. D.C. Code § 22-2501 (2012 Repl.). On appeal, he contends that this statute does not apply to the bolt cutters he possessed and, therefore, the government failed to prove the offense charged. We agree.

## I.     Factual and Statutory Background

At approximately 3:45 a.m. on July 1, 2012, Metropolitan Police Department Officer Perry Morgan saw J.W. and another youth examining a Vespa scooter that was chained to a fence.  Despite the hot weather, J.W. was dressed in black ski pants and had a black ski mask perched on top of his head.  He was also carrying two-foot-long bolt cutters with yellow handles.  When the two young men noticed the officer, they climbed on a bicycle and rode towards him.  After stopping them, Officer Morgan asked J.W., who was sixteen years old at the time, what he was doing with the bolt cutters.  J.W. replied, "[W]hat, I can't have these[?] . . . . [A]n officer said that it was okay for [me] to have these," and then dropped them to the ground.  J.W. was arrested and, after a bench trial, was found "involved" in possessing the implements of crime.

J.W. was charged with violating a statute that prohibits the possession of "any instrument, tool, or implement for picking locks or pockets, with the intent to use such instrument, tool, or implement to commit a crime."  D.C. Code § 22-2501 (2012 Repl.).  The predecessor statute, part of the vagrancy laws, "was clearly intended as a 'burglar tool' statute, the wording of which was typical of similar

misdemeanor enactments in many states."[1] *Rosenberg v. United States*, 297 A.2d 763, 765 (D.C. 1972). In 1941 Congress broadened the scope of the vagrancy statute by deleting language pertaining to "burglary" and "against property." Pub. L. No. 77-352, 55 Stat. 808 (1941) (codified as D.C. Code § 22-3302). After the amendment, the statute covered the implements of "any crime," but it continued to be applied primarily to the possession of burglary tools. *See, e.g.*, *Patten v. United States*, 248 A.2d 182, 183 (D.C. 1968) ("a paper bag containing several tools commonly used for burglary"). The expansive language of the 1941 statute survived in subsequent enactments,[2] and the statute was increasingly applied "to narcotics paraphernalia, explosive mechanisms and other devices[.]" *Rosenberg*, 297 A.2d at 765.

---

[1] This statute labeled as "vagrants," those "[p]ersons upon whom shall be found any instrument, tool or other implement used for the commission of burglary, or the commission of any other crime against property, or for picking locks or pockets who shall fail to give a good account of the possession of the same[.]" Pub. L. No. 60-303, 35 Stat. 711 (1909).

[2] *See* Pub. L. No. 83-85, 67 Stat. 97 (1953) (codified as D.C. Code § 22-3601) (repealed) ("No person shall have in his possession in the District any instrument, tool, or other implement for picking locks or pockets, or that is usually employed or reasonably may be employed in the commission of any crime, if he is unable satisfactorily to account for the possession of the implement.").

In 1981, the Council of the District of Columbia created a new offense, possession of drug paraphernalia,[3] and repealed the statute which prohibited possession of implements of crime. *See* § 410 and § 604 (a)(2) of the District of Columbia Uniform Controlled Substances Act of 1981, D.C. Law 4-29, 28 D.C. Reg. 3108 (1981). Three months later, the Council enacted a new statute that substantially narrowed the categories of instruments, tools, and implements to which it applied.[4] *See* D.C. Law 4-52, § 3 (g), 28 D.C. Reg. 4348 (1981). Thus, the current "statute applies only to the possession of [an] 'instrument, tool or implement for picking locks or pockets,' unlike the former provision, which reached beyond those instruments to include other implements which are 'usually employed, or reasonably may be employed in the commission of any crime.'"

---

[3] This statute generally prohibits the possession of "a hypodermic needle, hypodermic syringe, or other instrument that has on or in it any quantity (including a trace) of a controlled substance with intent to use it for administration of a controlled substance by subcutaneous injection in a human being[.]" D.C. Law 4-29, § 410, 28 D.C. Reg. 3108 (1981) (codified originally as D.C. Code § 33-550 (1981) and currently as D.C. Code § 48-904.10 (2012 Repl. & 2014 Supp.)). The next year, the Drug Paraphernalia Act of 1982 created an additional, more generalized, offense of possession of drug paraphernalia. *See* D.C. Law 4-149, § 4, 29 D.C. Reg. 3369 (1982) (codified originally as D.C. Code § 33-603 and currently as D.C. Code § 48-1103 (a) (2014 Supp.)).

[4] The new statute also removed language about the defendant satisfactorily accounting for his possession of the implement, eliminating concerns that the previous statute had unconstitutionally shifted the burden of proof to the defendant. D.C. Law 4-52, § 3 (g), 28 D.C. Reg. 4348 (1981); *see Benton v. United States*, 232 F.2d 341, 345 (D.C. Cir. 1956).

Criminal Jury Instructions for the District of Columbia, No. 5.403 cmt. (5th ed. rev. 2013).

## II.     Construing the Statute

When construing a statute, our purpose "is to ascertain and give effect to the intent of the legislative body that drafted the language." *Tenley & Cleveland Park Emergency Comm. v. District of Columbia Bd. of Zoning Adjustment*, 550 A.2d 331, 334 n.10 (D.C. 1988).   But "[t]he primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he [or she] has used." *Peoples Drug Stores v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc) (internal quotation marks and citation omitted).   Thus, our primary focus is on the plain language of the statute, and this is perforce true where, as here, there is no legislative history explaining the Council's intent in narrowing the scope of the statute.[5]   Furthermore, "in examining the statutory

---

[5]   In a footnote to an opinion issued shortly after the new implements of crime statute was enacted, this court concluded "that the Council intended . . . to repeal [the possession of implements of crime statute] solely as it applied to narcotics paraphernalia; and to substitute therefor . . . a specific narcotics paraphernalia possession provision." *United States v. Covington*, 459 A.2d 1067, 1068 n.1 (D.C. 1983).  Although the Council may not have intended to repeal the previous statute in its entirety, it did not restore the original expansive language when it enacted a new statute to replace the old one.  It appears that this process of

(continued…)

language, it is axiomatic that '[t]he words of the statute should be construed according to their ordinary sense and with the meaning commonly attributed to them.'" *Id.* (quoting *Davis v. United States*, 397 A.2d 951, 956 (D.C. 1979)).

The first element of the crime requires the possession of "any instrument, tool, or implement for picking locks or pockets[.]" D.C. Code § 22-2501 (2012 Repl.). Here, of course, we are concerned with the picking of locks, not the picking of pockets. It seems more likely that appellant would have used the bolt-cutters to sever the chain which secured the scooter rather than to break the lock. But even if the lock was his target, "picking a lock" is generally understood to require skill rather than brute force, as confirmed by the following definitions of "pick": *Webster's Third New International Dictionary* 1709 (2002) ("to turn (a lock) with a wire or a pointed tool instead of the key esp. with intent to steal"); *Dictionary.com*, http://dictionary.reference.com/browse/pick (last visited Sept. 15,

---

(…continued)
repeal and partial reenactment has left a statutory gap. *Cf., e.g.*, Del. Code Ann. tit. 11, § 828 (West 2014) (prohibiting possession of burglar's tools or instruments facilitating theft); N.Y. Penal Law § 140.35 (McKinney 2014) (prohibiting possession of burglar's tools and instruments "adapted, designed or commonly used for committing or facilitating . . . offenses involving larceny by a physical taking"); Va. Code Ann. § 18.2-94 (West 2014) (prohibiting possession of tools or implements "with intent to commit burglary, robbery or larceny").

2014) ("to open (a lock) with a device other than the key, as a sharp instrument or wire, especially for the purpose of burglary").

The government proffers an expansive definition of lock-picking that includes any manner of "open[ing] a lock with an instrument other than the proper key." *Oxford Dictionaries*, http://www.oxforddictionaries.com/definition/english/pick-a-lock (last visited Sept. 16, 2014). *See also American Heritage Dictionary* 1368 (3d ed. 1992) ("To open (a lock) without the use of a key."). But a penal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited[,]" *Kolender v. Lawson*, 461 U.S. 352, 357 (1983), and we doubt that an ordinary citizen would anticipate that the term "picking locks" encompasses every conceivable method of opening (including breaking or destroying) a lock without the key. We therefore conclude that, in this context, the term "picking a lock" means "the opening of the lock without the use of the original or duplicate keys and without damage to the lock." *See Segal Lock & Hardware Co. v. Fed. Trade Comm'n*, 143 F.2d 935, 937 (2d Cir. 1944) (citation omitted).

### III.   Applying the Statute

We agree that bolt cutters may be used to commit a crime and that there was abundant evidence that appellant carried them for that purpose.  Thus, a cursory comparison of these facts to the title of the statute – "possession of implements of crime" – might lead to the conclusion that appellant is guilty of the crime charged.  However, "[t]he significance of the title of the statute should not be exaggerated." *Mitchell v. United States*, 64 A.3d 154, 156 (D.C. 2013).  "[H]eadings and titles are not meant to take the place of the detailed provisions of the text."  *Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co.*, 331 U.S. 519, 528 (1947).  We therefore focus our analysis on the text of the statute, which limits its reach to tools and implements "for picking locks or pockets."  Because bolt cutters are not "lock-picking tools" within the definition we have adopted, there was insufficient evidence to sustain J.W.'s adjudication.  We therefore vacate the adjudication for possessing implements of crime.

*It is so ordered*.